# Exhibit 2

## COMMONWEALTH OF KENTUCKY
## DAVIESS CIRCUIT COURT, DIVISION _II_
## CIVIL ACTION NO. 17-CI-00_308_

FILED
MAR 23 2017
BY: SUSAN W. TIERNEY, CLERK D.C.

JOHN D. JOHNSON
and
LISA R. JOHNSON                                      PLAINTIFFS

v.

Nationstar Mortgage, LLC
a Foreign limited liability company
Principal Office
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019                                    DEFENDANT

SERVE:

Registered Agent
Corporation Service Company
421 WEST MAIN STREET
FRANKFORT, KY 40601

# COMPLAINT

The Plaintiffs, John D. Johnson and Lisa R. Johnson, ("Plaintiffs") by and through

counsel, state the following for their Complaint:

### Parties

1.      John D. Johnson and Lisa R. Johnson reside at 10624 Highway 951 Hawesville,

KY 42348.

2.      The Defendant, Nationstar Mortgage, LLC, (NMLLC) is a Foreign limited

liability company with its Principal Office located at, 8950 Cypress Waters Blvd, Coppell, TX

75019. It is registered with the Kentucky Secretary of State and conducts business in the state of

Kentucky and is subject to the jurisdiction of this court.

## Factual Allegations

3.      By deed dated February 15, 2002, the Plaintiffs acquired the real estate located at 10624 Highway 951 Hawesville, KY 42348. The real estate is situated in Daviess County, Kentucky.

4.      On June 27, 2007 the Plaintiffs executed a mortgage in favor of Countrywide Bank, FSA in the amount of $200,000. Countrywide Bank later merged with Bank of America.

5.      On May 13, 2010 the Plaintiffs filed a chapter 13 petition in bankruptcy in the United States Bankruptcy Court for the Western District of Kentucky case number 10-40836.

6.      Bank of America Loan Servicing was listed as a creditor in the petition. BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP (BAC) filed a proof of claim in a Chapter 13 on August 20, 2010 for $196,915.79. The proof of claim claimed an arrearage of $3,073.24.

7.      BAC amended that claim on September 16, 2013 to show an arrearage of $2,377.92. On October 28, 2010, the order of confirmation was amended to reflect an arrearage on amended claim number 13 to Bank of America Home Loan Servicing of $3,073.24.

8.      On June 29, 2012 BAC moved for stay relief ( related docket entry 47 (hereinafter doc)). That motion stated, inter alia, that the claim of BAC Home Loan Servicing was now the claim of Bank of America by virtue of merger. Bank of America alleged default in payments of $7,966.07.

9.      The Plaintiffs responded and denied that they were in default. They attached to their response a proof of all payments made to BAC from December 11, 2011 through June 2012. The  response further alleged that the payments to BAC for June and July 2012 were refused by BAC.

10.     On August 15, 2012, the Bankruptcy court ordered an evidentiary hearing on the motion (doc 51). That hearing was continued by agreement of the parties. By order dated November 14, 2012 motion for stay relief was terminated (doc 55).

11.     While this was progressing, the Plaintiffs entered into a home loan modification with BAC. On March 14, 2013, counsel for the Plaintiffs moved the bankruptcy court to permit the Plaintiffs to enter into a loan modification that would among other things, reduce the Plaintiffs monthly payment to $1,093.11 including taxes and insurance.

12.     On March 15, 2013, the Bankruptcy court approved the loan modification (doc 57).

13.     On or about November 8, 2013, Nationstar Mortgage, LLC, filed a "Transfer of Claim  Other than for Security" in which they advised that they had acquired the Bank of America mortgage. The notice advised the Plaintiffs where to send the payments. The letter was signed by the Nationstar Mortgage, LLC bankruptcy department.

14.     On or about November 20, 2013, Nationstar Mortgage, LLC ( NMLLC) notified the Plaintiffs and the court of the transfer of the Bank of America claim to NMLLC (doc 64).

15.     On March 5, 2014, NMLLC advised the attorney for the Plaintiff that the payment to NMLLC was more than 30 days late. The notice included a list of options including a mortgage modification program.

16.     On March 24, 2014, counsel for the Plaintiffs by letter advised NMLLC that they could speak directly with the Plaintiffs on any proposed loan modification.

17.     On or about April 13, 2014, NMLLC sent counsel for the Plaintiffs a letter about a dedicated loan specialist for loss mitigation opportunities. Counsel mailed this to Plaintiffs on April 15, 2014.

18.     On December 2, 2014 NMLLC mailed a letter to Plaintiff's counsel identifying

the Plaintiffs' dedicated loan specialist. On January 13, 2015 counsel for the Plaintiff mailed that

letter to the Plaintiffs.

19.     On May 20, 2015, the Plaintiffs' plan was completed and an order to discontinue

wage   deduction was entered (doc 82).

20.     On June 2, 2015 (doc 84), the  Chapter 13 trustee filed notice of final cure

payment. This notice stated that the defendant NMLLC filed a claim for $2,377.92 and that claim

had been paid. The notice gave the defendant NMLLC 21 days to file a statement, 1) whether it

agreed that the debtors have paid in full the amount required to cure the default, and 2) whether

the debtor is otherwise current on all payments consistent with 11 USC section 1332 (b) (5). The

notice reflected a copy mailed to NMLLC at its address of PO Box 619094, Dallas, TX 75261-

9741.

21.     On June 4, 2015 (doc 86) the Chapter 13 trustee filed a notice of plan completion

and need to file request for discharge.

22.     On June 11, 2015, the debtors filed a certification of plan completion and request

for discharge.

23.     On June 23, 2015 NMLLC filed (doc 88) a response to notice of final cure

payment and completion of payments under the plan. The notice stated that NMLLC agreed that

the debtors paid the full amount required to cure the default on the loan. NMLLC agreed that the

debtors were otherwise current on all payments consistent with 11 USC section 1322 (b) (5).

NMLLC stated that the mortgage was paid directly and it was due for the June 1, 2015 payment.

The letter was signed by the attorney for the NMLLC.

24.     In fact, payment for June was made on June 22, 2015. All monthly payments required in the course of the Chapter 13 proceedings were made timely.

25.     On June 30, 2015 (doc 89), the court entered a discharge of debtor after completion of the chapter 13 plan. The Plaintiffs had completed their plan and were out the bankruptcy. On July 9, 2015 the trustee filed his final report and accounting (doc 91). The final decree was entered on July 10, 2015 and the case was closed. A copy of that order was mailed to the counsel for NMLLC.

26.     On October 29, 2015, NMLLC notified Plaintiffs that there was an escrow shortage of $9,182.21 and that the monthly escrow would increase by $765.19 and that the monthly payment would increase from $1,093.44 to $2,058 63. This statement was clearly wrong.

27.     The counsel for Plaintiffs wrote a letter to NMLLC advising them that they were mistaken and requesting that they correct their records. This advice was sent to NMLLC via fax.

28.     Rather than correct its records, on January 4, 2016, NMLLC sent a notice that the loan was in default as of November 1, 2015. That notice stated that the Plaintiffs needed to pay $5,156.04 to bring their home loan current. In order to cure the default, $5,156.04 must be paid by February 8, 2016. Failure to pay may result in foreclosure. The letter was signed by a dedicated loan specialist for NMLLC.

29.     Despairing of all other options, the Plaintiffs filed a motion to reopen the Chapter 13 case. On January 20, 2016, bankruptcy court reopened the Johnson's Chapter 13 case. Thereafter the Plaintiffs filed their motion for sanctions and request for attorneys fees.

30.     On January 22, 2016, (doc 96), the bankruptcy court set the motion for contempt sanctions for hearing.

31.     On February 8, 2016 counsel for NMLLC was notified that NMLLC had canceled the automatic bank draft. Plaintiffs requested instructions on how to make the payment.

32.     After negotiation, the parties on July 1, 2016 ( doc 106) entered into an "agreed motion for sanction and awarding costs and attorneys fees." The parties agreed that the debtors were not in default and that there was no escrow shortage. The defendant NMLLC agreed that the plaintiffs were current until May 20, 2016 and credited the plaintiffs $810.91 towards the June payment. The order also awarded the plaintiffs their attorneys fees and cost.

33.     On July 12, 2016, NMLLC notified the Plaintiffs that there were unapplied funds and suspense of $459.16 advising that the funds could be used towards payment. Actually the credit was $810.91 as per the agreed order filed July 1, 2016 (doc 106).

34.     On July 19, 2016, counsel for the Plaintiffs wrote counsel for NMLLC advising opposing counsel of the problems they were encountering with NMLLC, including NMLLC refusing to provide either a coupon or a monthly statement. Counsel included the July 12, 2016 letter from NMLLC.

35.     On July 19, 2016 NMLLC, again wrote to the Plaintiffs advising them that the funds in suspense was now $958.25.  The letter stated the total amount required to bring the loan current was $3,351.30. In fact, the loan was current and that fact was known to NMLLC.

36.     On about July 19, 2016, NMLLC sent a statement claiming that the Plaintiffs now owed $2,021.85. This included $2,804.50 for attorneys fees and $15.00 for property inspection.

37.     On August 16, 2016 counsel for NMLLC mailed a check to Wilkey and Wilson PSC for the court ordered attorneys fees and costs in the amount of $1135 as per the July 1, 2016 agreed order.

38.     On August 18, 2016 Plaintiffs received a monthly mortgage statement from NMLLC which showed a mortgage payment due of $1,982.17.

39.     On August 19, 2016 counsel for Plaintiffs sent a letter to counsel for NMLLC advising that the payment on the mortgage was $1,310.48 and asked NMLLC to send the mortgage statement.

40.     On September 20, 2016 the Plaintiffs received a monthly mortgage statement which showed a mortgage payment due of $1,946.42.   On October 1, 2016 a letter from NMLLC advised the Plaintiffs of the monies in suspense of $684.31 and advised the Plaintiffs that they needed the amount of $635.94 to be current.

41.     October 17, 2016 Plaintiffs filed a motion to reopen the bankruptcy case to force NMLLC to correct its account records.

42.     In November of 2016, the Plaintiffs were  contacted by agents from New Cingular Wireless about leasing a portion of their real estate to construct a cell tower. As the land was subject to the NMLLC mortgage, this agreement required the consent of NMLLC. By email, the agent for Cingular stated to the Plaintiff that NMLLC had advised Cingular that the Plaintiffs had not made the October and November payments. In fact, these payments had been made to NMLLC and this fact was known to NMLLC.

43.     On December 5, 2016 Catherine T.,whose title according to her email was document administration with NMLLC, emailed Lisa Crammer of New Cingular Wireless advising her that, among other things, her company needed an oil and gas subordination agreement and that the Plaintiffs were due for October and November 2016 mortgage payment.

44.     By email, Lisa Crammer replied, "I'm working with AT&T Wireless to build a new cell' phone tower on the Johnson's property (loan number #0615836533). I'm not sure why

this email is referencing "Oil and Gas" when what I'm doing is with a cell tower and not oil and gas. Attached is the agreement I emailed to NationStar in October, which I need NationStar to fill out and sign. Mrs. Lisa Johnson faxed over the authorization form on 12/4/16.

45. Again, NMLLC replied through its employee,

"From: Catherine T.

To: Lisa Crammer <lisa@bluewavedeployment.com>

Cc:

Date: Mon, 5 Dec 2016 22:06:14 +0000

Subject: Cell Tower Subordination Information Needed xxxxxxxxxxxx3364 JOHNSON

Hello, This is to acknowledge the receipt of the Cell Tower subordination request.
We do apologize for the confusion this may cause you.

Please be advised, we still are waiting for the Authorization letter be uploaded in our system.

For the meantime, may we request for the following document(s) to completer our review

-$250.00 MONEY ORDER or CASHIER'S CHECK for the Subordination fee (fee is required prior to consideration)

-A complete/recorded copy of the lease agreement

-Application for Release of Security (attached below). Please complete page one in its entirety

-A Survey/Drill Site Map that shows the location and distance of the house and oil and gas operation

The Nationstar Mortgage loan must be current. Please make your October and November payment(s) -A letter from an appraiser indicating the impact the operation will have on

the value of the property. The letter should be drafted by a person certified to make a valid assessment. The letter should indicate the basis for the property valuation, provide a fair market value of the property being released, and provide an explanation if the value of the remaining property is, or will be, enhanced or diminished as a result. There should also be a statement indicating the commonality of these operations within the area of the proposed lease."

46.     Once more, the email requested information not relevant, not in existence (recorded oil and gas lease) and stated that the October and November payments were not made. Cingular Wireless advised the Plaintiffs that unless the payments were current, they could not go forward with the lease agreement with AT&T.

47.     On January 3, 2017, NMLLC once more advised the Plaintiffs of the assignment to their account of yet another dedicated loan specialist.

48.     On January 24,2017, by email from NMLLC, NMLLC advised Cingular Wireless that it was advancing funds to show that the Plaintiffs were current.

49.     On December 14, 2016 Lisa Crammer of AT&T advised that they were dropping the proposed deal with the Johnsons because they could not deal with NMLLC.

### Negligent Interference with Contractual Relationship

50.     One who, without a privilege to do so, induces or otherwise causes a third person not to a) perform a contract with another, or b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.

51.     The defendant NMLLC has shown a pattern of failure to maintain accurate records. This failure to maintain records has been a continuing problem. The negligent record keeping of NMLLC caused them to report to Cingular and AT&T that the Plaintiffs were not

current on their mortgage. This report of delinquency was a critical factor in the decision of

AT&T not to enter into a lease agreement with the Plaintiffs for space to locate a cell tower.

52.     That lease agreement provided that a substantial monthly payment would be made

to the Plaintiffs for an initial term of 5 years with an automatic right to renew for 4 additional

five-year terms.

53.     By failing to accurately record and report the status of the Plaintiffs' mortgage

account with them the defendant NMLLC interfered with their contract with Cingular Wireless

and caused them to withdraw the offer to locate the cell tower on their real estate.

54.     The amount of the damages sustained by the Plaintiffs is sufficient to meet the

minimum jurisdictional dollar amount of the Daviess Circuit Court.

**WHEREFORE** the Plaintiffs demand judgment against the defendant NMLLC in such

amounts as may be shown at trial and that they be awarded their cost and any other relief to

which they may appear entitled.

Respectfully submitted this 23rd day of March, 2017.

/s/ Russ Wilkey

Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303
Phone: (270) 685-6000
Fax: (270) 683-2229
Email: rwilkey@wilkeylaw.com
Counsel for Defendants, John and Lisa Johnson




COMMONWEALTH OF KENTUCKY
SUSAN W. TIERNEY, CLERK
DAVIESS CIRCUIT AND DISTRICT COURTS
P.O. BOX 277
OWENSBORO, KY 42302-0277

↑ FOLD AND TEAR HERE ↑

Thank you for using Return Receipt Service

9414 7266 9904 2956 5453 26
RETURN RECEIPT REQUESTED

NATIONSTAR MORTGAGE, LLC
SERVE BY REGISTERED AGENT:
CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT, KY 40601

17-CI-308   DIV II

LINE 1

Filed          17-CI-00308     04/19/2017        Susan Tierney, Daviess Circuit Clerk

# COMMONWEALTH OF KENTUCKY
## DAVIESS CIRCUIT COURT, DIVISION II
### CIVIL ACTION NO. 17-CI-00308

JOHN D. JOHNSON and                                                       PLAINTIFFS
LISA R. JOHNSON


v.            **AGREED MOTION FOR EXTENSION OF TIME**
                    **(ELECTRONICALLY FILED)**


NATIONSTAR MORTGAGE LLC                                          DEFENDANT


Defendant Nationstar Mortgage LLC  moves the Court for entry of the tendered agreed order allowing Defendant an extension of time until and including May 9, 2017, for Defendant to answer or otherwise respond to Plaintiffs' Complaint. The extension is not intended to delay these proceedings, but instead is requested to allow counsel and Defendant time to investigate the allegations in Plaintiffs' Complaint and prepare a meaningful response.  Plaintiffs have consented to the extension.  A proposed agreed order granting the extension of time is submitted herewith.

Respectfully submitted,


*s/ Katrina L. Miller*
Christy A. Ames
Katrina L. Miller
STITES & HARBISON PLLC
400 W. Market Street, Suite 1800
Louisville, KY 40202
Telephone: (502) 681-0429
Email: cames@stites.com
          kmiller@stites.com

COUNSEL FOR DEFENDANT

Filed                    17-CI-00308        04/19/2017              Susan Tierney, Daviess Circuit Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed and served by United States First Class Mail, postage prepaid, on this 19th day of April, 2017 upon:

Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303

*s/ Katrina L. Miller*
Katrina L. Miller

Filed                    17-CI-00308        04/19/2017        Susan Tierney, Daviess Circuit Clerk

DB1F006A-BB67-4D6A-9B85-C9E6F89BEBCD : 000002 of 000004

EOT : 000002 of 000002

# COMMONWEALTH OF KENTUCKY
## DAVIESS CIRCUIT COURT, DIVISION II
### CIVIL ACTION NO. 17-CI-00308

JOHN D. JOHNSON and                                                    PLAINTIFFS
LISA R. JOHNSON


v.        **AGREED ORDER EXTENDING DEADLINE FOR DEFENDANT TO
          RESPOND TO COMPLAINT (ELECTRONICALLY TENDERED)**


NATIONSTAR MORTGAGE LLC                                              DEFENDANT

\*     \*     \*     \*     \*

The parties having agreed to an extension of time, and the Court being otherwise

sufficiently advised, IT IS HEREBY ORDERED that Nationstar Mortgage LLC shall have up to

and including May 9, 2017, to respond to the Complaint filed by John Johnson and Lisa Johnson.

Dated this _____ day of _____, 2017.


_____
CIRCUIT COURT JUDGE


Tendered by:

*s/ Katrina L. Miller*
Katrina L. Miller
STITES & HARBISON PLLC
400 W. Market Street, Suite 1800
Louisville, KY 40202
*Counsel for Defendant*

*s/ Russ Wilkey* (with permission)
Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303
*Counsel for Plaintiffs*

Tendered        17-CI-00308    04/19/2017        Susan Tierney, Daviess Circuit Clerk

DISTRIBUTION TO:

Christy A. Ames
Katrina L. Miller
STITES & HARBISON PLLC
400 W. Market Street, Suite 1800
Louisville, KY 40202                    [_____]

Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303                     [_____]


_____
Circuit Clerk                        Date

Tendered        17-CI-00308    04/19/2017        -2-    Susan Tierney, Daviess Circuit Clerk

DB1F006A-BB67-4D6A-9B85-C9E6F89BEBCD : 000004 of 000004

TD : 000002 of 000002

Filed            17-CI-00308      05/09/2017        Susan Tierney, Daviess Circuit Clerk

**COMMONWEALTH OF KENTUCKY**
**DAVIESS CIRCUIT COURT**
**CIVIL ACTION NO. 17-CI-308**
**DIVISION TWO**

**JOHN D. JOHNSON & LISA R. JOHNSON**                                    **PLAINTIFFS**

v.                    **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
                                      **MOTION TO DISMISS**

                               *ELECTRONICALLY FILED*

**NATIONSTAR MORTGAGE LLC**                                          **DEFENDANT**


                          *    *    *    *    *


        Defendant Nationstar Mortgage LLC ("Nationstar") submits the following Memorandum

in support of its Motion to Dismiss Plaintiffs, John and Lisa Johnson's, Complaint.

                                    **INTRODUCTION**

        Nationstar seeks dismissal of Plaintiffs' Complaint because they assert a cause of action

that does not exist in the Commonwealth of Kentucky.  The heart of this dispute arises from

Plaintiffs' alleged loss of a possible lease of a portion of their property to New Cingular Wireless

(Cingular Wireless) for the construction of a cell tower.  (Compl. ¶ 42.)  Plaintiffs claim that

Cingular Wireless informed them that it was "dropping the proposed deal" with them because it

could no longer work with Nationstar in order to obtain Nationstar's required consent for the

lease agreement.  (*See* Compl. ¶¶ 42–49.)  Plaintiffs' Complaint asserts a claim for negligent

interference with contractual relationship.  (Compl. ¶¶ 50–54.)  As explained below, this cause of

action fails as a matter of law because Kentucky does not recognize such a claim.  Consequently,

Nationstar respectfully requests that the Court dismiss Plaintiffs' claim against it with prejudice.

## FACTUAL BACKGROUND[1]

Plaintiffs claim that Cingular Wireless contacted them in November 2016 regarding the potential lease. (Compl. ¶ 42.)  According to Plaintiffs, because the land in question was subject to Nationstar's mortgage, Nationstar had to consent to the lease agreement.  (Compl. ¶ 42.) Plaintiffs contend that Nationstar represented to Cingular Wireless that Plaintiffs were behind on their mortgage payments when in fact they were current on their mortgage payments. (Compl. ¶¶ 42, 45–46.)  Plaintiffs also state that Nationstar demanded $250.00 from Cingular Wireless before it would complete its review of the proposed lease and requested irrelevant information pertaining to a non-existent oil and gas lease.  (Compl. ¶¶43–46.)  Plaintiffs allege that on December 14, 2016, as a result of the aforementioned alleged actions of Nationstar, Cingular Wireless informed them it was no longer going to pursue the lease for the construction of a cell tower.  (Compl. ¶ 49.)  Following Cingular Wireless' decision to terminate negotiations, Nationstar allegedly contacted Cingular Wireless, stating that it was advancing funds to show that Plaintiffs were current on their mortgage payments.  (Compl. ¶ 48.)

## ARGUMENT

Plaintiffs' lengthy Complaint asserts only one cause of action—Negligent Interference with Contractual Relationship.  This Court should dismiss Plaintiffs' claim because Kentucky *does not recognize* a claim for negligent interference with contractual relations. There is not a single Kentucky decision that discusses, let alone adopts, the claim of negligent interference with contractual relationship.  Moreover, Kentucky's neighboring state of Ohio has explicitly stated that it does not recognize the claim.  *Watson v. Neurology Consultants, Inc.*, 1992 Ohio App. LEXIS 3264, at *4–6 (Oh. Ct. App. June 25, 1992).  Notably, Ohio is not alone in its decision not to recognize a claim for negligent interference with contractual relations.  *See Wiltz v. Bayer*

---

[1] For purposes of this motion alone, Nationstar will treat the facts alleged in the complaint as true.  *See Pike v. George*, 434 S.W.2d 626, 627 (Ky. 1968).

2

Filed             17-CI-00308      05/09/2017          Susan Tierney, Daviess Circuit Clerk

*CropScience, Ltd. P'shp*, 645 F.3d 690, 701 (5th Cir. 2011) (citation omitted) ("Recovery of economic losses for negligent interference with contractual relations is almost uniformly denied in other jurisdictions."). Courts' refusal to recognize a claim for negligent interference with contractual relations "reflects a concern for limiting the scope of a defendant's potential economic liability. . . . Without such a limitation, a defendant may be exposed to potentially limitless liability, because a single negligent act may affect a multitude of contractual relationships." *Getty Ref. & Mktg. Co. v. M/T Fadi B*, 595 F. Supp. 452, 454 (E.D. Pa. 1984). Therefore, the Court should dismiss with prejudice Plaintiffs' claim for negligent interference with contractual relations.

### CONCLUSION

For the foregoing reasons, Defendant Nationstar respectfully requests that this Court dismiss Plaintiffs' Complaint, with prejudice.

Respectfully submitted,

/s/ Jennifer A. Pekman_____
Christy A. Ames
Jennifer A. Pekman
STITES & HARBISON PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
Email: cames@stites.com
        jpekman@stites.com
*Counsel for Defendant, Nationstar Mortgage LLC*

3

6483A365-7F86-444F-A373-B8F1BBA6DF70 : 000003 of 000011

MEM : 000003 of 000004

Filed                    17-CI-00308      05/09/2017              Susan Tierney, Daviess Circuit Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via electronic mail through Kentucky CourtNet and U.S. Mail, postage prepaid, upon the following on this 9th day of May, 2017:

Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303
*Counsel for Plaintiff*

/s/ *Jennifer A. Pekman*_____

1151637:1:LOUISVILLE

4

Filed                    17-CI-00308      05/09/2017              Susan Tierney, Daviess Circuit Clerk

6483A365-7F86-444F-A373-B8F1BBA6DF70 : 000004 of 000011

MEM : 000004 of 000004

Filed          17-CI-00308      05/09/2017          Susan Tierney, Daviess Circuit Clerk

# COMMONWEALTH OF KENTUCKY
## DAVIESS CIRCUIT COURT
### CIVIL ACTION NO. 17-CI-308
#### DIVISION TWO

**JOHN D. JOHNSON & LISA R. JOHNSON**                                  **PLAINTIFFS**

v.                    **DEFENDANT'S NOTICE AND MOTION TO DISMISS**

*ELECTRONICALLY FILED*

**NATIONSTAR MORTGAGE LLC**                                          **DEFENDANT**

## NOTICE

Please take notice that on Tuesday, May 23, 2017 at 8:30 a.m., CDT, in the above Court,

Defendant Nationstar Mortgage LLC will present its Motion to Dismiss.

## MOTION

Pursuant to Kentucky Rule of Civil Procedure 12.02(f), Defendant Nationstar Mortgage

LLC moves for the claim against it to be dismissed.  Plaintiffs' single-count Complaint fails to

state a claim for Negligent Interference with Contractual Relationship because Kentucky does

not recognize such a claim.  For this reason, which is set forth in more detail in the

accompanying memorandum of law, the Court should dismiss Plaintiffs' Complaint, with

prejudice.

6483A365-7F86-444F-A373-B8F1BBA6DF70 : 000005 of 000011

DIS : 000001 of 000004

Filed            17-CI-00308      05/09/2017        Susan Tierney, Daviess Circuit Clerk

Respectfully submitted,


/s/ Jennifer A. Pekman_____
Christy A. Ames
Jennifer A. Pekman
STITES & HARBISON PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
Email: cames@stites.com
   jpekman@stites.com
*Counsel for Defendant, Nationstar Mortgage LLC*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via electronic mail through Kentucky CourtNet and U.S. Mail, postage prepaid, upon the following on this 9th day of May, 2017:

Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303
*Counsel for Plaintiff*


/s/ Jennifer A. Pekman_____

Filed          17-CI-00308     05/09/2017          Susan Tierney, Daviess Circuit Clerk

# COMMONWEALTH OF KENTUCKY
## DAVIESS CIRCUIT COURT
### CIVIL ACTION NO. 17-CI-308
### DIVISION TWO

**JOHN D. JOHNSON & LISA R. JOHNSON**                                  **PLAINTIFFS**


v.                                  **ORDER OF DISMISSAL**

**NATIONSTAR MORTGAGE LLC**                                  **DEFENDANT**



This matter is before the Court on Defendant Nationstar Mortgage LLC's Motion to

Dismiss Plaintiffs' Complaint.  Having considered Defendant's Motion and being otherwise

sufficiently advised;

IT IS HEREBY ORDERED that Defendant's Motion is GRANTED, and Plaintiffs'

Complaint is DISMISSED with prejudice.

SO ORDERED this _____ day of _____, 2017.



_____

Judge, Daviess Circuit Court

6483A365-7F86-444F-A373-B8F1BBA6DF70 : 000007 of 000011

DIS : 000003 of 000004

Filed                    17-CI-00308        05/09/2017              Susan Tierney, Daviess Circuit Clerk

Tendered by:

Christy A. Ames
Jennifer A. Pekman
STITES & HARBISON PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
Email: cames@stites.com
        jpekman@stites.com


Distribute copies to:

Russ Wilkey                          Christy A. Ames
WILKEY & WILSON, P.S.C.              Jennifer A. Pekman
111 West Second Street              STITES & HARBISON PLLC
Owensboro, KY 42303                 400 West Market Street
                                     Suite 1800
                                     Louisville, KY 40202-3352


1152233:1:LOUISVILLE

6483A365-7F86-444F-A373-B8F1BBA6DF70 : 000008 of 000011

DIS : 000004 of 000004

Filed       17-CI-00308    05/09/2017      Susan Tierney, Daviess Circuit Clerk

 Cited
As of: May 9, 2017 8:22 PM Z

# *Watson v. Neurology Consultants, Inc.*

Court of Appeals of Ohio, Seventh Appellate District, Mahoning County

June 25, 1992, Decided

CASE NO. 91 C.A. 74

**Reporter**

1992 Ohio App. LEXIS 3264 *; 1992 WL 150181

LINDA WATSON, et al, PLAINTIFFS-APPELLANTS, - VS - NEUROLOGY CONSULTANTS, INC., et al, DEFENDANTS-APPELLEES.

**Prior History:** **[*1]** CHARACTER OF PROCEEDINGS: Civil Appeal from Mahoning County Common Pleas Court. Case No. 87-CV-1768

**Disposition:** JUDGMENT: Affirmed.

## Core Terms

contractual relationship, negligent interference, workers' compensation, damages

## Case Summary

**Procedural Posture**

Plaintiff appealed an order of the Mahoning County Common Pleas Court(Ohio), which dismissed plaintiff's action and entered judgment for defendant on plaintiff's negligent interference with contract claim.

**Overview**

Plaintiff suffered a workplace injury, for which defendant rendered medical treatment. Defendant allegedly misdated a form, which affected plaintiff's ability to obtain worker's compensation. It also affected her relationship with her employer. The lower court dismissed plaintiff's claim and entered judgment for defendant. On appeal, the court affirmed the lower court's judgment, concluding that Ohio did not recognize a cause of action for negligent interference with contract. There was no duty of ordinary care as to damages flowing from a third party contract. Thus, defendant was no liable for damages caused by his negligence in filling out a worker's compensation form. Likewise, defendant was not responsible for the impact of his negligence on plaintiff's relationship with her employer. Based on the foregoing, the lower court properly entered judgment for defendant.

**Outcome**

The court affirmed the lower court's order, which dismissed plaintiff's claim and entered judgment for defendant.

## LexisNexis® Headnotes

Torts > ... > Commercial Interference > Contracts > General Overview

Torts > ... > Elements > Duty > General Overview

*HN1*[⬇️] Ohio does not recognize a cause of action for negligent interference with a contractual relationship. There is no duty of ordinary care with respect to damages flowing from a third party contract. One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently (a) causing a third person not to perform a contract with the other, or (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or (c) interfering with the other's acquiring a contractual relationship with a third person.

**Counsel:** APPEARANCES: For Plaintiffs-Appellants: Timothy E. Franken, 407 Legal Arts Centre, Youngstown, Ohio 44503.

For Defendants-Appellants: James L. Blomstrom, 1200 Mahoning Bank Bldg., Youngstown, Ohio 44503.

**Judges:** Hon. Joseph Donofrio, Hon. Edward A. Cox, Hon. Joseph E. O'Neill

**Opinion by:** JOSEPH E. O'NEILL

6483A365-7F86-444F-A373-B8F1BBA6DF70 : 000009 of 000011

OP : 000001 of 000003

Filed       17-CI-00308    05/09/2017      Susan Tierney, Daviess Circuit Clerk

Jennie Pekman

Filed          17-CI-00308      05/09/2017      Susan Tierney, Daviess Circuit Clerk

1992 Ohio App. LEXIS 3264, *1

# Opinion

*OPINION*

O'NEILL, J.

The appellant, a postal worker, was injured while at work. She sought the medical help of the defendant-appellee. In order to qualify for workers compensation and compensated days off, it was required that the doctor submit various and different forms to the Department of Labor Workers Compensation Department and, apparently, also the postal authorities. In some manner, the attending physician misdated some form which was submitted. Counsel for appellant related in his opening statement the following:

"Dr. Green was a noted neurology consultant. There was a problem by the Department of Labor and a request was made by the Department of Labor to relate their billing to the injury of August 25th of 1985 and to relate [*2] the time off for Mrs. Watson after the 28th to the injury of the 25th. Mrs. Watson found out about that. She asked the doctor to do the same thing. The doctor submits an error. He doesn't do that. He doesn't relate these things. He's doesn't relate anything. that. He's very vague, which is the nicest term we'll use. He doesn't relate to the date of the examination. He doesn't correct the mistake -- the date of the examination -- and relates none of the bills she has incurred for tests he ordered for her time off.

"More forms are sent. More things are sent back, none of which corrects the original error. Mrs. Watson requested him to clear up the problem that we are having. She was not getting paid. Her bills were not being paid.

"Dr. Green will tell you, ladies and gentlemen, that it would be very dishonest for him to have related her neck sprain and strain and muscle spasm of the neck to her getting hit in the head with a 40 pound shelf. That's why he didn't do it. It came from something else. That is why he would not correct the obvious mistake of the date -- the 28th and the 29th -- why he wouldn't explain to the Department of Labor Workers' Compensation what the tests [*3] were for, and why he wouldn't relate her time off to that injury.

"* * *

"Because Dr. Green would not correct his errors, the evidence will show that Mrs. Watson has been damaged. Her medical bills, other than the one up to the

28th, were not paid. They should have been. Her time off after the 28th of August 1985 was not compensated. It should have been. * * *

"As you will see from the evidence, Linda Watson was caused damage and caused financial loss. It's not going to be a lot of money. Nobody is looking to get rich, just get what is right. And you will see from the evidence it was caused by Dr. Green and the company that he owned solely in 1985, Neurology Consultants, Inc. As I said, it's not a lot. The evidence will show you she is entitled to her damages. She was injured." (Tr. 5-7).

Following this opening statement, upon motion of the defendant-appellee, the trial judge signed and filed a judgment entry reflecting, in pertinent part:

"* * * The plaintiff's opening statement attempts to set forth a claim for negligent interference with a contractual relationship. Ohio law does not recognize a cause of action under the circumstances of this case."

The trial [*4] judge dismissed the plaintiff's case and a timely notice of appeal was filed.

In essence, it was the insistance of the appellant that, because of errors by the appellee, she was caused damages because of lost work with her employer, the U.S. Postal Service and further damages because of a loss of monies under workers compensation. In other words, the negligence of the appellee directly affected her contractual relationship with her employer and with the Division of Workers Compensation.

*HN1*[⬆] Ohio does not recognize a cause of action for negligent interference with a contractual relationship. In an unreported case, *Lindsey* v. *Candage* (May 16, 1988), Stark App. 7356, the Stark County Court of Appeals was considering an issue raised by an employee against his physician. Apparently, his physician had notified his employer that he was able to return to work on January 30, 1984, but failed to notify the employee of this date. As a result of his failure to appear for work, the employee was discharged from his employment. He filed a complaint in the trial court which eventually came before the Court of Appeals. The Court of Appeals ruled, in pertinent part, as follows:

"The nature [*5] of the negligence action is in dispute, the appellee claiming that the cause of action alleges negligent interference with a contractual employment relationship. Appellant alleges it is an 'action for simple negligence.' * * *

Filed          17-CI-00308      05/09/2017      Susan Tierney, Daviess Circuit Clerk
Jennie Pekman

6483A365-7F86-444F-A373-B8F1BBA6DF70 : 000010 of 000011

OP : 000002 of 000003

Filed                 17-CI-00308       05/09/2017           Susan Tierney, Daviess Circuit Clerk

1992 Ohio App. LEXIS 3264, *5

"Notwithstanding protestations to the contrary by the appellant, we conclude that this is an action for negligent interference with a contractual relationship, i.e., the employment contract between appellant and Sugardale. The facts, construed most favorably to the appellant, demonstrate a classic case of NEGLIGENT INTERFERENCE with CONTRACTUAL relationships. See 4 *Restatement of Law 2d, Torts (1979), 23*, s 766(C).

"Ohio conforms to the general rule that there is no duty of ordinary care with respect to damages flowing from a third party contract. See *Sayre v. U.S. (Northern District Ohio, 1967), 282 F. Supp. 175*; *Reichman v. Drake (1951), 89 Ohio App. 222, 45 O.O. 444*, (allowing recovery for willful interference).

"One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently (a) causing a third person not to perform a contract with the other, or **[*6]** (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or (c) interfering with the other's acquiring a contractual relationship with a third person."

In 88 Ohio Jurisprudence 3d 319-322, Torts, Sec. 17, it is specifically stated, at page 321:

"Ohio does not recognize a negligent interference with contractual relationship claim."

We cannot leave this case without noting that this was not a case of intentional interference with a contractual relationship.

The judgment of the trial court is affirmed.

Donofrio, P.J., concurs.

Cox, J., concurs.

APPROVED:

Joseph E. O'Neill

JUDGE.

**End of Document**

Filed                 17-CI-00308       05/09/2017           Susan Tierney, Daviess Circuit Clerk

Jennie Pekman

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

*Electronically Filed*

# COMMONWEALTH OF KENTUCKY
## DAVIESS CIRCUIT COURT, DIVISION II
### CIVIL ACTION NO. 17-CI-00308

JOHN D. JOHNSON                                        PLAINTIFFS
 and
LISA R. JOHNSON

v.

NATIONSTAR MORTGAGE, LLC                               DEFENDANT

****************

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

*****************

    Come now the plaintiffs by counsel and submit this response to the motion to dismiss filed by counsel for the defendant, Nationstar Mortgage, LLC.

    The motion to dismiss filed by the defendant alleges that the complaint fails to state a cause of action as Kentucky does not recognize a cause of action for negligent interference with contract. This is not the law in the State of Kentucky. In 1997, the Court of Appeals of Kentucky, then Kentucky's highest court, held that the tort of negligent interference with contract as set forth in *Restatement of Torts Second, Section 766* is the law in this Commonwealth.

    "Appellee local agency and appellant out-of-state agency agreed to work together to provide advertising for a client. The out-of-state agency withdrew from the contract and formed a new agreement with the client, excluding the local agency. The local agency filed an action for intentional interference in the contractual relationship. A Kentucky trial court awarded damages to the local agency. The out-of-state agency appealed.

    The court reversed in part and affirmed in part. Damages should not have exceeded the local agency's lost profits. The court reversed only so that damages could be recomputed.

    "Unfortunately, the court referred to Brooks v. Patterson, supra, and authorities cited therein as standing for this proposition. But juxtaposed with Brooks v. Patterson, supra, the court cited Restatement, Torts, § 766. Coca-Cola Bottling Works, supra, again recognized the tort, but found that no substantive evidence showed an inducement to cancel the contract. We feel confident that Brooks v. Patterson, supra, no longer governs

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000001 of 000025

EXH : 000001 of 000004

Filed                17-CI-00308      05/19/2017           Susan Tierney, Daviess Circuit Clerk

and that the Restatement of Torts § 766 presents the correct guidelines. § 766 provides, [except] as stated in Section 698, HN4 one who, without a privilege to do so, induces or otherwise causes  a third person not to
a) perform a contract with another, or
b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.
The lower court could reasonably conclude Nolan and C-L-N not justified in persuading Woodson Bend to permit C-L-N to handle all the advertising to the exclusion of Bennett. `Damages in this case should not exceed Bennett's lost profits. It appears that the court awarded Bennett the fees it would have received without taking into account its cost. We reverse only so that damages can be recomputed.  Carmichael-Lynch-Nolan Advert. Agency, Inc. v. Bennett & Assocs., Inc., 561 S.W.2d 99, 102 (Ky. Ct. App. 1977)

This case was cited with approval and recognized as the law in the State of Kentucky in

the case of  Ventas, Inc. v. Health Care Prop.  Inv'rs, Inc., 635 F. Supp. 2d 612, 620 (W.D. Ky.

2009)

"The  classic tortious interference with contractual relations case occurs where a third party disrupts the successful fulfillment of a contract. Here, the essence of the Purchase Agreement required Sunrise REIT to submit the Ventas bid to a vote of the unitholders and to use its best  efforts to secure approval. Sunrise REIT met both of these obligations responsibly under confusing circumstances. These differences are another basis for this Court's concern.

"The Restatement describes two classic patterns of interference with contract. *See, Dan B. Dobbs, The Law of Torts: Practitioner Treatise Series Vol. 2 § 446* [West current through 2008]. The first is a breach by a promisor or fiduciary, such as when "the defendant intentionally and without justification induces the plaintiff's employee to breach his employment contract and work for the defendant instead of the plaintiff." Id. The second is where the defendant "makes the plaintiff's performance impossible or more burdensome," such as when a landlord prevents a tenant from assigning a lease, thereby making it impossible for the tenant to sell his business. Id.; see also Campbell v. Westdahl, 148 Ariz. 432, 715 P.2d 288 (Ariz. 1985).

In Campbell, the plaintiff entered a lease under which he ran a plant nursery in the building and on adjoining outdoor space. 715 P.2d at 290-91. *The lease restricted assignment and subleasing. After some time, the plaintiff decided to sell his nursery business and entered into a purchase contract. The plaintiff then contacted the landlord to assign the property lease to the new business owner. The landlord repeatedly refused to assign the lease. Since the landlord would not allow a lease assignment, the purchase could not be completed. The Arizona Court affirmed the jury finding that the landlord wrongfully interfered with the plaintiff's purchase contract by unreasonably withholding consent to sublet.* Id. at 294, 295.( Emphasis supplied to point out striking similarity

Filed                17-CI-00308      05/19/2017           Susan Tierney, Daviess Circuit Clerk

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

between the cited case and the case at bar)

Kentucky explicitly recognized the tort in <u>Carmichael-Lynch-Nolan Adver. Agency, Inc.
v. Bennett & Assocs., Inc.</u>. 561 S.W.2d 99 (Ky. App. Ct. 1977). Woodson Bend hired the
defendant to advertise and do public relations work for the opening of Woodson Bend
Resort Club at Lake Cumberland for three to five years. Woodson Bend also hired the
plaintiff to handle a portion of the advertising. The contract outlining the joint venture
divided the advertising responsibilities and compensation. After a short-time, the plaintiff
became dissatisfied with the contract and convinced Woodson Bend to release the
plaintiff from the contract and allow it to do all the advertising work. Without the
defendant's knowledge, the plaintiff and Woodson Bend agreed that the defendant could
then bid on the public relations work, but would do no more advertising. The Kentucky
Appellate Court held that the plaintiff had unjustifiably induced Woodson Bend to breach
its contract with the defendant, by permitting the plaintiff to do all the advertising work.
Id. at 102. The defendant recovered his lost profits and costs. Id.  <u>Ventas, Inc. v. Health
Care Prop. Inv'rs, Inc.</u>, 635 F. Supp. 2d 612, 620 (W.D. Ky. 2009)

It would appear that contrary to the position of the defendant,  Kentucky law recognizes

this tort and has since as early as 1977. This cause of action has been recognized by the federal

courts in the Western District of Kentucky as the law in this state as recently as 2009.

This course of dealing with its customers is not new and fits a fact pattern that is all too

familiar. *See*, <u>May v. Nationstar Mortg.</u>, LLC, 852 F.3d 806, 811 (8th Cir. 2017) Evidence that

the loan servicer acted with a reckless indifference to the borrower's rights was legally sufficient

to establish the requisite mental state to support the punitive damages awarded by the jury;The

jury's punitive damages award did not violate the Due Process Clause of the Fourteenth

Amendment as the record supported a conclusion that the loan servicer's conduct was

reprehensible, the 8-to-1 ratio between the borrower's punitive award and compensatory award

was not too great, and the absence of comparable civil penalties did not render the punitive

damages award unconstitutionally excessive. <u>May v. Nationstar Mortg., LLC</u>, 852 F.3d 806, 811

(8th Cir. 2017) (opinion attached)

Filed                    17-CI-00308      05/19/2017          Susan Tierney, Daviess Circuit Clerk

**CONCLUSION**

The plaintiff prays  that the motion to dismiss of the defendant be denied.

Respectfully submitted this 19th day of May, 2017.

/s/ Russ Wilkey
Russ Wilkey
Steven D. Wilson
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303
Phone: (270) 685-6000
Fax: (270) 683-2229
Email: rwilkey@wilkeylaw.com
        Swilson@wilkeylaw.com
Counsel for Defendants, John and Lisa Johnson

**NOTICE**

Please take notice that on Tuesday, May 23, 2017 at 8:30 a.m., CDT, in the above Court, the plaintiff will present its response to the Motion to Dismiss of the Defendant Nationstar Mortgage LLC .

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via electronic mail through Kentucky CourtNet and via fax to: 502-779-8215, upon the following on this 19th day of May, 2017:

Christy A. Ames
Jennifer A. Pekman
STITES & HARBISON PLLC
400 West Market Street Suite 1800 Louisville, KY 40202-3352
Telephone: (502) 587-3400
Email: cames@stites.com jpekman@stites.com
Counsel for Defendant, Nationstar Mortgage LLC

/s/ Russ Wilkey

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000004 of 000025

EXH : 000004 of 000004

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1285
_____

Jeannie K. May

*Plaintiff - Appellee*

v.

Nationstar Mortgage, LLC

*Defendant - Appellant*

_____

No. 16-1307
_____

Jeannie K. May

*Plaintiff - Appellant*

v.

Nationstar Mortgage, LLC

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 15, 2016
Filed: March 29, 2017

_____

Filed                    17-CI-00308      05/19/2017        Susan Tierney, Daviess Circuit Clerk

Before WOLLMAN and SMITH,[1] Circuit Judges, and WRIGHT,[2] District Judge.

_____

WRIGHT, District Judge.

Appellee/Cross-Appellant Jeannie K. May commenced this action to recover damages under state and federal law arising from the debt-collection practices of Appellant/Cross-Appellee Nationstar Mortgage, Inc.  A jury found in favor of May on her invasion-of-privacy claim and her claim that Nationstar negligently violated the Fair Credit Reporting Act.  The jury awarded May compensatory damages on both claims and punitive damages on her invasion-of-privacy claim.

On appeal, Nationstar argues that insufficient evidence supports the jury's award of punitive damages because May failed to present clear and convincing evidence that Nationstar acted with an evil motive or with a reckless indifference to May's rights.  In the alternative, Nationstar contends that the punitive damages award is unconstitutionally excessive in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  May cross-appeals, challenging the district court's[3] exclusion of testimony at trial and its jury instruction addressing the Real Estate Settlement Practices Act.  We affirm.

---

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

[2]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, sitting by designation.

[3]The Honorable Thomas C. Mummert, III, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

-2-

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

May purchased a home in Overland, Missouri, secured by a $100,000 mortgage in 2007. Shortly thereafter, she stopped making mortgage payments and filed for Chapter 13 bankruptcy. Through the bankruptcy process, May entered a five-year payment plan to pay down her mortgage and arrears. Although Nationstar acquired the servicing rights to May's mortgage in 2010, Nationstar did not communicate directly with May because of the pending bankruptcy. When May's debt was discharged from bankruptcy in January 2013, she requested monthly mortgage statements from Nationstar.

May received her first mortgage statement in March 2013. The statement erroneously included thousands of dollars in "lender-paid" expenses. Also, rather than applying a $51 credit to May's account, Nationstar improperly debited $5,162 from the account. Nationstar's errors caused its records to incorrectly reflect a delinquency of $8,534.94 on May's mortgage. Nationstar initiated collection efforts.

May received her first collection call from Nationstar in March 2013, the same month that she began receiving mortgage statements. May immediately contacted Nationstar, but Nationstar's employees—acting on erroneous records—informed May that she was delinquent on her mortgage. During the next several months, May regularly received calls from Nationstar at her home, in public and, most often, at work.

In April 2013, prompted by a call from May, Nationstar submitted May's file to its research department. Nationstar determined on May 15, 2013, that it had made an accounting error in May's account and directed its cash department to credit the account from Nationstar's internal bankruptcy fund. Nationstar's cash department rejected the requested credit, however, because May had been discharged from bankruptcy and her account no longer reflected a bankruptcy code. Nationstar's

-3-

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

research department never followed up on this discrepancy, and Nationstar never credited May's account.

Instead, Nationstar resumed its collection efforts and presented May with two options—vacate her home or accept a loan modification. The proposed loan modification would have added the erroneously calculated arrears to May's principal balance. May refused, and Nationstar initiated the loan modification anyway. May repeatedly attempted to correct the accounting errors by calling and sending written complaints to Nationstar. Although May continued tendering monthly mortgage payments, Nationstar began rejecting the payments in September 2013 because its internal policy required it to accept only full payments. Nationstar deemed May's payments insufficient because of its erroneous determination that her account was in arrears. Nationstar initiated its foreclosure process. May retained counsel.

In his December 19, 2013 letter, May's attorney attempted to explain May's circumstances to Nationstar. In response, Nationstar's correspondence verified the debt and enclosed the note, deed of trust and a payment history. May's attorney requested a substantive response. Nationstar in turn notified May of the February 24, 2014 foreclosure sale. Thereafter, Nationstar conducted frequent inspections of May's residence, allegedly in preparation for the foreclosure sale.

May filed this lawsuit together with a motion for a temporary restraining order to stop the foreclosure sale. As relevant here, May alleged that Nationstar's conduct (1) violated her right to privacy under Missouri law, (2) constituted negligent reporting under the Fair Credit Reporting Act, (3) willfully violated the Fair Credit Reporting Act, (4) violated the Fair Debt Collection Practices Act, and (5) violated the Real Estate Settlement Practices Act. Nationstar removed the action to the Eastern District of Missouri and cancelled the foreclosure sale. Nationstar's

-4-

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000008 of 000025

EXH : 000004 of 000020

Filed                    17-CI-00308    05/19/2017          Susan Tierney, Daviess Circuit Clerk

subsequent investigative and remedial process took several months.  On April 28, 2014, Nationstar credited the erroneously deducted $5,162 to May's account, but Nationstar did not remove the improper "lender-paid" expenses or correct the rejection of May's monthly payments.  Nationstar's revised records continued to erroneously indicate that May's account was delinquent.  The account balance on May's mortgage was not corrected until October 2014.

At trial, May recounted her experience with Nationstar.  This included May's repeated efforts to remedy her account with Nationstar and stop Nationstar's collection practices.  May's credit score was also adversely affected because Nationstar reported a delinquent debt that she did not owe.  May and her physician testified that May experienced symptoms of severe stress attributable to Nationstar's conduct, including abdominal pain, vomiting, depression and anxiety.  May testified that Nationstar ignored her repeated requests to stop calling her, particularly at work, and that Nationstar's employees spoke to her in a mocking and sarcastic manner on several occasions.  May argued that Nationstar's corporate culture unduly focused on collection efforts, which prevented Nationstar from correcting her account sooner.

Nationstar admitted that it made many mistakes when servicing May's account, but disputed May's allegations that these mistakes were intentional or the product of an institutionalized corporate practice.  To counter May's suggestion that Nationstar was motivated by profit when it sought to foreclose on May's home, Nationstar presented evidence that it loses money when it forecloses on a property.

The jury awarded May $50,000 in compensatory damages and $400,000 in punitive damages for Nationstar's invasion of her privacy, in violation of Missouri law, and $50,000 in compensatory damages for Nationstar's negligent reporting, in violation of the Fair Credit Reporting Act.  The district court subsequently denied

-5-

Filed                    17-CI-00308      05/19/2017          Susan Tierney, Daviess Circuit Clerk

Nationstar's motion to alter or amend the judgment.  Nationstar's appeal and May's cross-appeal follow.

### I.

Nationstar advances two arguments, in the alternative, that challenge the award of punitive damages.  First, Nationstar argues that insufficient evidence supports the jury's award of punitive damages because May failed to present clear and convincing evidence that Nationstar acted with an evil motive or a reckless indifference to May's rights.  Alternatively, Nationstar challenges the constitutionality of the punitive damages award, arguing that because it is excessive, the award violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  We address each argument in turn.

### A.

Nationstar asserts that insufficient evidence supports the jury's award of $400,000 in punitive damages because the evidence fails to establish that Nationstar acted with ill-will or malice.  Rather, according to Nationstar, the evidence supports the conclusion that Nationstar's errors were made in good faith.  May counters that Nationstar was notified of its mistakes and its conduct thereafter demonstrated a "reckless disregard" to May's rights.  By concluding that Nationstar acted with a reckless indifference to her rights, May contends, the jury found Nationstar's persistent collection efforts—despite May's payment history and debt protests—were inconsistent with Nationstar's claimed good faith.

-6-

Filed                    17-CI-00308      05/19/2017          Susan Tierney, Daviess Circuit Clerk

Filed          17-CI-00308      05/19/2017        Susan Tierney, Daviess Circuit Clerk

When exercising diversity jurisdiction, as we do here, we apply the forum state's substantive law to any state-law claims. *See Bazzi v. Tyco Healthcare Grp., LP*, 652 F.3d 943, 946 (8th Cir. 2011). Under Missouri law, punitive damages may be awarded for invasion of privacy. *Engman v. Sw. Bell Tel. Co.*, 591 S.W.2d 78, 81-82 (Mo. Ct. App. 1979). The purpose of punitive damages is not to compensate the plaintiff, but rather to punish and deter the defendant. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. 1996). As such, punitive damages are an extraordinary and harsh remedy that should be awarded sparingly. *Id.* Whether the evidence is sufficient to support an award of punitive damages is a question of law, which we review de novo. *Trickey v. Kaman Indus. Techs. Corp.*, 705 F.3d 788, 799 (8th Cir. 2013) (citing *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 869 (Mo. Ct. App. 2009)).

Before punitive damages can be awarded, a plaintiff must present clear and convincing evidence of a defendant's culpable mental state. *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. 1989). This standard requires proof that the defendant acted with either an evil motive *or* a reckless indifference to the plaintiff's rights. *Id.* Such proof can be established by direct or circumstantial evidence. *Trickey*, 705 F.3d at 800; *Drury v. Mo. Youth Soccer Ass'n*, 259 S.W.3d 558, 573 (Mo. Ct. App. 2008). A jury may infer that a defendant has the requisite culpable motive when evidence of the defendant's reckless indifference to the interests and rights of the plaintiff is presented. *Drury*, 259 S.W.3d at 573. Such evidence supporting punitive damages need not be—and often is not—separate from the evidence supporting a substantive claim. *Trickey*, 705 F.3d at 800. It is the jury's role "to evaluate [the] evidence and decide what inferences should be drawn from it." *JCB, Inc. v. Union Planters Bank, NA*, 539 F.3d 862, 873 (8th Cir. 2008). We will overturn the jury's verdict only when "there is a complete absence of probative facts" such that "no proof beyond speculation [supports] the verdict." *Wedow v. City of Kansas City*, 442 F.3d 661, 669 (8th Cir. 2006).

Filed          17-CI-00308      05/19/2017        Susan Tierney, Daviess Circuit Clerk

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000011 of 000025

EXH : 000007 of 000020

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

In *JCB, Inc.*, we rejected an argument very similar to the one Nationstar advances here.  When a bank and a private creditor disputed which party had a superior interest in a debtor's property, the bank eventually provided notice of its intent to sell the property despite multiple objections from the creditor.  *JCB, Inc.*, 539 F.3d at 867-68.   After the bank seized and sold the property, the creditor successfully sued for trespass and conversion and was awarded punitive damages. *Id.* at 869.  The bank challenged the punitive damages award claiming, as Nationstar does here, that insufficient evidence supported the award because the bank believed in good faith that its actions complied with the law.  *Id.* at 872-73.  Such an argument did not prevail in *JCB, Inc.*, nor does it here.  "Simply presenting . . . evidence of good faith to the jury does not immunize a defendant from punitive damages."  *Id.* at 873.  Determining the weight and credibility of the evidence, and any inference to be drawn from it, is the province of the jury.  *Id.*  This record presents no basis to reject the jury's determination.

Nationstar argues that the evidence demonstrates that its actions were nothing more than a series of unintentional errors.  In doing so, Nationstar attempts to distinguish *JCB, Inc.*, based on its responsiveness to May.  Nationstar maintains that "the defendant in *JCB* defiantly ignored the plaintiff's complaint and actually went through with a full foreclosure and sale," whereas here "Nationstar listened to May, tried to fix the problem with her account at multiple junctures, and never actually foreclosed on her home."[4]  Evidence that Nationstar acted with a reckless indifference

---

[4]Nationstar also relies on decisions from other jurisdictions that address the award of punitive damages.  These cases are inapposite.  For example, Nationstar cites inapplicable Minnesota law and circumstances when punitive damages were awarded on a negligence claim, which requires a different standard of proof from the reckless-indifference standard employed here.  *See, e.g.*, *Litchfield v. May Dep't Stores Co.*, 845 S.W.2d 596, 600 (Mo. Ct. App. 1992) (articulating standard in negligence cases involving punitive damages in which mere error is distinguished

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000012 of 000025

EXH : 000008 of 000020

to her rights is legally sufficient to establish the requisite mental state to support the punitive damages awarded by the jury, May counters.  We agree.

The record reflects that May contacted Nationstar repeatedly to demand that it resolve the issues with her account.  But rather than suspending its efforts, Nationstar aggressively pursued collection, posted May's home for foreclosure and conducted inspections of her residence.  May also testified that Nationstar employees, at times, spoke to her in a mocking and sarcastic manner and that she suffered physical ailments from the stress caused by Nationstar's conduct.  In evaluating this evidence, it was the jury's responsibility to determine the credibility and weight of the evidence presented.  In doing so, the jury was free to reject Nationstar's characterization of its conduct and determine that these facts and circumstances warranted punitive damages.  The verdict reflects the jury's decision to credit May's arguments that her repeated protests and requests for assistance should have halted the collection process long before the foreclosure proceedings commenced.  *See JCB, Inc.*, 539 F.3d at 873 (explaining that it is the jury's role "to evaluate [the] evidence and decide what inferences should be drawn from it").

A review of the trial record establishes that there is ample evidence that supports the jury's determination.  The jury's verdict reflects its assessment of the evidence, including its rejection of Nationstar's good-faith theory and acceptance of May's arguments that Nationstar acted with a reckless indifference to her rights.  On this record, sufficient evidence supports the jury's award of punitive damages.  Nationstar's renewed assertions that it acted in good faith provides no legal basis to vacate the jury's verdict.

---

from negligent conduct evincing "complete indifference or conscious disregard" to the rights of others).

**B.**

Nationstar next argues that the $400,000 punitive damages award is unconstitutionally excessive because it violates the Due Process Clause of the Fourteenth Amendment.  The constitutionality of punitive damages is subject to de novo review. *Trickey*, 705 F.3d at 802.[5]  Although juries have considerable flexibility in determining the amount of punitive damages, the Due Process Clause serves as a governor and prohibits "grossly excessive civil punishment." *Id.* (quoting *Ondrisek v. Hoffman*, 698 F.3d 1020, 1028 (8th Cir. 2012)).  Punitive damages are grossly excessive if they "shock the conscience" of the court or "demonstrate passion or prejudice on the part of the trier of fact." *Ondrisek*, 698 F.3d at 1028 (quoting *Stogsdill v. Healthmark Partners, L.L.C.*, 377 F.3d 827, 832 (8th Cir. 2004)).

We consider three factors when determining whether a punitive damages award shocks the conscience or demonstrates passion or prejudice.  They are "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between actual or potential harm suffered and the punitive damages award (often stated as a ratio between the amount of the compensatory damages award and the punitive damages award); and (3) the difference between the punitive damages award and the civil penalties authorized in comparable cases."  *Id.* (quoting *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 602 (8th Cir. 2005)); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996).  These factors serve as the "guideposts" to ensure that a defendant receives proper notice of possible penalties. *Ondrisek*, 698 F.3d at 1028.  We address each factor in turn.

---

[5]Missouri has adopted the federal standard for reviewing the constitutionality of a punitive damages award. *See Krysa v. Payne*, 176 S.W.3d 150, 156-57 (adopting federal standard, but noting deference to trial court's findings of fact).

-10-

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

1.

We first evaluate whether the reprehensible nature of Nationstar's conduct warrants punitive damages. Reprehensibility is the most important guidepost. *Gore*, 517 U.S. at 575. When assessing reprehensibility, the Supreme Court instructs us to consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). The presence of just one indicium of reprehensibility is sufficient to render conduct reprehensible and support an award of punitive damages. *See Trickey*, 705 F.3d at 803.

The record here supports a conclusion that Nationstar's conduct was reprehensible. May suffered physical harm. The severe stress attributable to Nationstar's conduct caused May to experience abdominal pain, vomiting, depression and anxiety. *See Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 790 (8th Cir. 2009) (concluding that physical symptoms attributable to severe stress qualify as physical rather than economic harm). Also, as addressed in Part II.A.1., the jury specifically determined that Nationstar acted with a reckless indifference to May's substantive rights. *See Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1027 (8th Cir. 2000) (explaining that the jury's substantive conclusion is relevant to a determination of reprehensibility). Nationstar concedes that May was financially vulnerable. Nor was Nationstar's conduct an isolated incident. Nationstar repeatedly

-11-

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000015 of 000025

EXH : 000011 of 000020

Filed            17-CI-00308    05/19/2017          Susan Tierney, Daviess Circuit Clerk

invaded May's privacy over the course of two years through actions including making collection calls to May at her workplace, conducting home inspections and sending foreclosure letters. *See, e.g.*, *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 839 (observing that a pattern of misconduct constitutes repeated actions). The reprehensible nature of Nationstar's conduct supports the jury's award of punitive damages. *See Trickey*, 705 F.3d at 803.

2.

As to the second factor, Nationstar contends that the 8-to-1 ratio between May's $400,000 punitive award and $50,000 compensatory award is too great. At most, according to Nationstar, a 1-to-1 ratio is appropriate. We disagree.

We do not apply "a simple mathematical formula" to determine the constitutionality of a punitive damages award. *Gore*, 517 U.S. at 582. But few awards exceeding a single-digit ratio of punitive to compensatory damages will satisfy due process. *State Farm*, 538 U.S. at 425. A 4-to-1 ratio likely will survive any due process challenge "given the historic use of double, treble, and quadruple damages." *Wallace v. DTG Operations, Inc.*, 563 F.3d 357, 363 (8th Cir. 2009). Yet the 4-to-1 ratio established in *Wallace* is not dispositive because an award of punitive damages turns on the specific facts of each case. *State Farm*, 538 U.S. at 425; *see also United States v. Big D Enters., Inc.*, 184 F.3d 924, 933 (8th Cir. 1999) (rejecting argument that punitive damages must be limited to 4-to-1 ratio as "miscontru[ing] the applicable law"). A higher ratio may be justified when the injury is hard to detect or the monetary damages are difficult to quantify. *Gore*, 517 U.S. at 582. Indeed, we have explained that a 4.8-to-1 ratio is the current constitutional boundary for multi-million dollar compensatory awards, *see Ondrisek*, 698 F.3d at 1030 (citing *Eden Elec., Ltd. v. Amana Co.*, 370 F.3d 824, 827 (8th Cir. 2004)), and have affirmed

-12-

Filed          17-CI-00308     05/19/2017        Susan Tierney, Daviess Circuit Clerk

higher ratios for smaller compensatory damage awards, *see Trickey*, 705 F.3d at 804 (affirming a 5-to-1 ratio); *Morse v. S. Union Co.*, 174 F.3d 917, 925-26 (8th Cir. 1999) (affirming a 5.7-to-1 ratio).

Our decision in *Morse* provides a meaningful reference to analyze May's award here.  After the district court granted remittitur motions to reduce the original awards, the plaintiff in *Morse* received $70,000 in compensatory damages and $400,000 in punitive damages arising from the defendant's violation of the Age Discrimination in Employment Act (ADEA).   174 F.3d at 921.   When affirming other punitive damages awards, we have cited with approval the district court's rationale for the punitive damages award in *Morse*:

> [The plaintiff's] evidence, which the jury credited, shows that [the employer's] top management [implemented policies that violated the ADEA] to achieve company objectives. . . . The award of $400,000 is less than one one-thousandth of [the employer's] approximately $500,000,000 net worth and the ratio of punitive to compensatory damages . . . is less than 6:1, a ratio that in these circumstances does not set off any alarm bells.

*Trickey*, 705 F.3d at 804 (citing *Morse*, 174 F.3d at 925).

When comparing May's award to the award at issue in *Morse*, May received $50,000 in compensatory damages rather than $70,000, resulting in an 8-to-1 ratio for May.   But here, as in *Morse* and *Trickey*, the jury credited May's evidence that Nationstar acted with a reckless indifference to her substantive rights.  The $400,000 punitive award also accounts for thirty-three thousandths of one percent of Nationstar's approximate $1.2 billion net worth.  *See id.* (considering net worth of defendant as relevant to the analysis).  Under the facts and circumstances presented,

-13-

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000017 of 000025

EXH : 000013 of 000020

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

the 8-to-1 ratio of May's award "does not set off any alarm bells," and it is not unconstitutionally excessive. *See id.*

3.

The final factor for consideration is the "disparity between the punitive damages award and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 428 (internal quotation marks omitted). The parties concede that there are no comparable civil penalties in this case because there is no civil penalty for invasion of privacy under Missouri law and the civil penalties for May's federal claims are nominal. Although May argues that her federal claims *could* have included statutory penalties for the costs of prosecution, she concedes that there is no way to discern which conduct the jury considered to be an invasion of her privacy. In light of the similarities between this case and others in which we have upheld an award of punitive damages, however, the absence of comparable civil penalties does not render the punitive damages award unconstitutionally excessive. *See Trickey*, 705 F.3d at 804; *Morse*, 174 F.3d at 925-26.

In sum, the jury's $400,000 punitive damages award does not violate the Due Process Clause of the Fourteenth Amendment.

II.

We next address May's cross-appeal, in which she challenges the district court's decision to exclude the testimony of Jennifer Prostredny, who allegedly experienced conduct by Nationstar that is similar to Nationstar's treatment of May. May argues that the district court erred because the admission of Prostredny's

-14-

Filed          17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000018 of 000025

EXH : 000014 of 000020

Filed            17-CI-00308     05/19/2017          Susan Tierney, Daviess Circuit Clerk

testimony would have rebutted Nationstar's claims of good faith and established that Nationstar's conduct was reckless and reprehensible.  May also contends that the district court erroneously instructed the jury on her claim under the Real Estate Settlement Practices Act.  We address each argument.

## A.

Before trial, Nationstar moved *in limine* to exclude "any reference to the facts or circumstances regarding or involving any borrower besides [May], including introducing any evidence regarding the facts and circumstances involving Jennifer Prostredny."[6]  Nationstar argued that Prostredny's testimony was inadmissible because it was irrelevant, prejudicial and improper propensity evidence.  The district court granted Nationstar's motion, but reserved its decision as to admissibility for the purpose of rebuttal.  The district court's ruling, however, precluded Nationstar from employing a defense theory that May's experience was isolated.

A Nationstar Vice President testified on cross-examination that May "was an exception" and "not [in] the majority . . . not what we want to happen to other customers."  The district court immediately admonished Nationstar and instructed the witness not to address "this sort of an issue."  Because the witness was under cross-

---

[6]Nationstar contends that May failed to preserve this issue for review because Prostredny's testimony is not included in the appellate record and May failed to proffer the testimony at trial.  But a motion *in limine* preserves an evidentiary ruling for appeal absent an offer of proof at trial.  *See Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952 (8th Cir. 2014).  The fact that Prostredny's testimony is not included in the appellate record also is not dispositive.  Nationstar relies on Rule 103(a), Fed. R. Evid., but that Rule provides that a claimed error is preserved if the substance of the excluded testimony is "apparent from the context."  Neither party disputes that Prostredny's testimony relates to her experience with Nationstar that was allegedly similar to Nationstar's treatment of May.

-15-

Filed          17-CI-00308      05/19/2017      Susan Tierney, Daviess Circuit Clerk

examination, however, the district court rejected May's argument that Nationstar "opened the door" as to whether May's experience with Nationstar was an isolated one. As a remedy, the district court permitted May's counsel to ask the Nationstar Vice President whether Nationstar had treated other customers similarly when servicing their mortgages.[7] The Nationstar Vice President admitted that "Nationstar . . . made errors with other borrowers."

The district court has broad discretion when deciding what evidence to admit at trial. *Cummings v. Malone*, 995 F.2d 817, 823 (8th Cir. 1993). We review a district court's decision to exclude evidence for a clear and prejudicial abuse of discretion. *Id.* An abuse of discretion occurs when the district court erroneously excludes admissible evidence and "there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted." *King v. Ahrens*, 16 F.3d 265, 268 (8th Cir. 1994) (quoting *Adams v. Fuqua Indus., Inc.*, 820 F.2d 271, 273 (8th Cir. 1987)). We may affirm evidentiary rulings on any ground supported by the record. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 895 (8th Cir. 2010).

We have affirmed the exclusion of evidence under circumstances nearly identical to those here. In *Bair v. Callahan*, we held that the district court did not abuse its discretion by excluding evidence of an orthopedic surgeon's mistakes in treating other patients on the ground that the evidence constituted improper, prejudicial propensity evidence. 664 F.3d 1225, 1229-30 (8th Cir. 2012). In addition, we concluded that admission of such evidence would result in "mini trials" that would needlessly confuse and distract the jury by drawing its attention away from the germane issues. *Id.* at 1230. We affirmed the district court's decision to permit

---

[7]We do not endorse the district court's statement to the parties regarding its expectation that specific remedial testimony would be rendered.

-16-

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000020 of 000025

EXH : 000016 of 000020

Filed                    17-CI-00308      05/19/2017        Susan Tierney, Daviess Circuit Clerk

more limited questioning that preserved an argument for presentation to the jury while preventing litigation of each prior act. *Id.*

Here, the district court excluded the Prostredny testimony to foreclose a needless "mini trial" about another borrower's experience for the improper purpose of establishing Nationstar's alleged propensity for mistreating other borrowers. *See id.* This ruling did not improperly impede May's presentation of evidence to undermine Nationstar's good-faith defense, which the jury apparently credited when it awarded her punitive damages. The decision to exclude Prostredny's testimony was well within the district court's sound discretion.

## B.

May also challenges the district court's jury instruction on her Real Estate Settlement Procedures Act (RESPA) claim. May argues that the instruction was erroneous because it was founded on a statutory provision that had not become effective, it incorrectly defined an exception to Nationstar's duty and it misstated provisions of the relevant regulation. Nationstar counters that May waived this issue by failing to object to the instruction at trial. Alternatively, Nationstar defends the instruction as a common-sense statement of applicable law and adds that any potential error had no effect on the jury's verdict.

"A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). When followed by litigants, Rule 51 affords the district court the opportunity to correct a defective instruction and helps "to prevent litigants from ensuring a new trial in the event of an adverse verdict by covertly relying on the error." *Mo. Pac. R.R. Co. v. Star City Gravel Co.*, 592 F.2d 455, 459

Filed                    17-CI-00308      05/19/2017        Susan Tierney, Daviess Circuit Clerk

1680D59C-A1E0-4310-A549-2B3709E3B07A : 000021 of 000025

EXH : 000017 of 000020

Filed          17-CI-00308      05/19/2017          Susan Tierney, Daviess Circuit Clerk

(8th Cir. 1979). Rule 51 requires a specific objection to a jury instruction before the jury retires, otherwise "a litigant waives the right on appeal to object to a jury instruction on those grounds." *Dupre v. Fru-Con Eng'g Inc.*, 112 F.3d 329, 333 (8th Cir. 1997). In the absence of a distinct objection, we will reverse only for plain error. *See* Fed. R. Civ. P. 51(d)(2); *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995). May did not object to the district court's RESPA instruction in a substantive manner. Accordingly, plain-error review is appropriate. Plain-error review is narrow and "confined to the exceptional case in which error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1054 (8th Cir. 2006) (internal quotation marks omitted).

As a party asserting a RESPA violation, May was required to demonstrate that (1) she sent Nationstar a qualified written request, (2) Nationstar failed to respond to that request, and (3) she suffered damages. *See Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012). Jury Instruction 19A, the target of May's appeal, stated: "Nationstar was not required to respond to any qualified written request if it reasonably determined that the request asserted the same error as an error previously asserted by May." May argues that Jury Instruction 19A improperly relied on a regulation that was not in effect at the time of Nationstar's misconduct. The effective date of that regulation—12 C.F.R. § 1024.35(g)(1)(I)—was January 10, 2014. According to May, many of her written requests to Nationstar preceded that effective date. Nationstar responds that Section 1024.35(g)(1)(I) is a codification of a preexisting "common-sense exception" to RESPA that applied to all of May's written submissions.

The parties' arguments demonstrate the importance of making a substantive objection when an instruction is offered. When such an objection is raised for the first time on appeal, we are placed in an untenable position.

-18-

Filed          17-CI-00308      05/19/2017          Susan Tierney, Daviess Circuit Clerk

To correct the error, we would have to notice *sua sponte* that the district court did not act *sua sponte* to provide a jury instruction that [a party] should have provided, and then we would have to remedy the problem in the face of [the complaining party's] *relative indifference* to it.  We have an adversarial system of justice, not an inquisitorial one, and to [correct the error despite the inaction] would be to blur the line between the two systems.  We decline to do so.

*Swipies v. Kofka*, 419 F.3d 709, 717 (8th Cir. 2005) (emphasis added).

Assuming without deciding that Jury Instruction 19A is a misstatement of the law, such an error would not entitle May to a reversal under plain-error review.[8]  For example, in *Christopherson v. Deere & Co.*, although the district court erroneously instructed the jury on a plaintiff's assumption of the risk, we affirmed because the exacting standard of plain error was not met.  941 F.2d 692, 694 (8th Cir. 1991) (concluding that "the essential fairness of the trial was not undercut by the omission of the word 'unreasonably' . . . and plaintiffs, who have been awarded substantial compensatory damages, have not suffered a miscarriage of justice").  The same is true here.  Given the multiple theories of defense to the RESPA claim that Nationstar advanced, we can only speculate about the reason for the jury's verdict.  Moreover, May recovered $500,000 in damages, a circumstance that undermines any argument

---

[8] Case law supports each party's position as to Jury Instruction 19A.  In *Campbell v. Nationstar Mortgage*, the United States Court of Appeals for the Sixth Circuit concluded that an instruction similar to Jury Instruction 19A stated an exception that had yet to take effect.  611 F. App'x 288, 297 (6th Cir. 2015). Notably, as the defendant in that case, Nationstar made an argument similar to the argument May now advances.  But other courts have adopted Nationstar's position in this case, that Jury Instruction 19A stated a common-law exception to RESPA for duplicate requests.  *See, e.g.*, *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 409 (E.D.N.Y. 2012).  This split in authority underscores the importance of substantive objections at trial for the district court's consideration.

-19-

Filed                    17-CI-00308      05/19/2017        Susan Tierney, Daviess Circuit Clerk

that the alleged RESPA error resulted in a miscarriage of justice.  On this record, May fails to establish that Jury Instruction 19A was plainly erroneous.

## III.

Based on the foregoing analysis, we affirm on all grounds.

_____

-20-

1680D59C-A1E0-4310-A549-2B37709E3B07A : 000024 of 000025

EXH : 000020 of 000020

Tendered        17-CI-00308    05/19/2017        Susan Tierney, Daviess Circuit Clerk

*Electronically Filed*

# COMMONWEALTH OF KENTUCKY
## DAVIESS CIRCUIT COURT, DIVISION II
### CIVIL ACTION NO. 17-CI-00308

JOHN D. JOHNSON                                         PLAINTIFFS
 and
LISA R. JOHNSON

v.

NATIONSTAR MORTGAGE, LLC                               DEFENDANT

****************

### ORDER DENYING  DEFENDANT'S MOTION TO DISMISS

****************

This matter came before the Court on Defendant Nationstar Mortgage LLC's Motion to

Dismiss Plaintiffs' Complaint. Having considered Defendant's Motion and being otherwise

sufficiently advised;

IT IS HEREBY ORDERED that Defendant's Motion is DENIED.

SO ORDERED this _____ day of May, 2017.

_____
Judge, Daviess Circuit Court

PREPARED BY:

/s/ Russ Wilkey
Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303

Tendered        17-CI-00308    05/19/2017        Susan Tierney, Daviess Circuit Clerk

Filed          17-CI-00308     05/26/2017          Susan Tierney, Daviess Circuit Clerk

**COMMONWEALTH OF KENTUCKY**
**DAVIESS CIRCUIT COURT**
**CIVIL ACTION NO. 17-CI-308**
**DIVISION TWO**

**JOHN D. JOHNSON & LISA R. JOHNSON**                               **PLAINTIFFS**


v.                 **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

*ELECTRONICALLY FILED*

**NATIONSTAR MORTGAGE LLC**                                   **DEFENDANT**


Defendant Nationstar Mortgage LLC ("Nationstar") respectfully submits the following

Reply in support of its Motion to Dismiss.

**INTRODUCTION**

Despite Plaintiffs' attempt to persuade the Court otherwise in their Response, Kentucky

*does not recognize the tort of negligent interference with contractual relations*—the only claim

asserted by Plaintiffs in this lawsuit.  To support their claim that this tort exists in Kentucky,

Plaintiffs extensively use block quotes from select cases.  However, the case law upon which

Plaintiffs rely involves an entirely different tort, *intentional* interference with contractual

relations.  No matter how Plaintiffs misquote the case law, the fact remains that Plaintiffs cannot

create a new cause of action in Kentucky out of thin air.  Accordingly, this lawsuit must be

dismissed with prejudice.

**ARGUMENT**

Kentucky recognizes business torts only "in certain well-defined circumstances."  *CMI,*

*Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995).  Kentucky's courts are

5B365CF5-7799-41A3-82DB-2ACF820E7166 : 000001 of 000022

RPL : 000001 of 000004

Filed        17-CI-00308    05/26/2017        Susan Tierney, Daviess Circuit Clerk

"reluctant to adopt new business torts involving parties in contractual relationships." *Tucker v. Heaton*, 2015 U.S. Dist. LEXIS 83180, at *33 (W.D. Ky. June 26, 2015).  Consequently, Kentucky's courts have not taken the unprecedented step to drastically expand a defendant's potential economic liability by adopting the business tort of negligent interference with a contractual relationship—a tort that is almost uniformly denied by other states.  (Def.'s Mot. to Dismiss, at 2–3.)

In their Response, to support their argument that Kentucky does in fact recognize the tort of negligent interference with contractual relations, Plaintiffs simply quote extensively from two opinions without any accompanying analysis.  (Pls.' Resp., at 1–3.)  Specifically, Plaintiffs first rely on the Kentucky Court of Appeals' decision in *Carmichael-Lynch-Nolan Advert. Agency, Inc. v. Bennett & Assocs., Inc.* to support their contention that negligent interference with contractual relations is a recognized claim in Kentucky.  561 S.W.2d 99, 102 (Ky. Ct. App. 1977).  Plaintiffs' reliance on *Carmichael*, however, is faulty because it was in that case that the court "set forth the principles governing the tort of *intentional interference* with contractual relations."  *CMI, Inc.*, 918 F. Supp. at 1079.   Following *Carmichael*, courts in Kentucky have held that plaintiffs must allege the following six elements in order to successfully state a claim for tortious interference with a contractual relationship:  (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) that the defendant *intended* to cause its breach; (4) the defendant's conduct caused the breach; (5) the breach resulted in damages to the plaintiff; and (6) the defendant had no privilege or justification to excuse its conduct.  *Id.*

Plaintiffs also rely on *Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.* to support their argument that Kentucky recognizes a claim for negligent interference with contractual relations. 635 F. Supp. 2d 612 (W.D. Ky. 2009).  Notably, Plaintiffs omit crucial information in their

2

5B365CF5-7799-41A3-82DB-2ACF820E7166 : 000002 of 000022

RPL : 000002 of 000004

Filed        17-CI-00308        05/26/2017        Susan Tierney, Daviess Circuit Clerk

quotation of the opinion. (Pls.' Resp., at 2–3.) For example, Plaintiffs conveniently omit the court's statement that "[t]ortious interference liability is *predicated upon an intentional interference*, malicious or without justification with known contractual rights possessed by the party suing to recover damages thereof." *Ventas*, 635 F. Supp. 2d at 621. Furthermore, Plaintiffs fail to include the court's recitation of the elements of a claim for tortious interference with contractual relations, requiring that the defendant "*intend[] to cause*" a breach of the contract at issue. *Id.* at 618–19.

Ultimately, the cases relied upon by Plaintiffs support Nationstar's position that while Kentucky recognizes a claim for *intentional* interference with contractual relations, it does not recognize a claim for *negligent* interference with contractual relations. Plaintiffs fail in their Response to cite a single case discussing, let alone, adopting the generally unrecognized claim of negligent interference with contractual relations.[1]

## CONCLUSION

As Plaintiffs' Complaint contains a singular claim for negligent interference with contractual relations and such a claim is not recognized in Kentucky, Nationstar respectfully requests that this Court dismiss Plaintiffs' Complaint, with prejudice.

---

[1] At the end of their Response, Plaintiffs make a blatant appeal to this Court's emotion in their discussion of *May v. Nationstar Mortg., LLC*, 852 F.3d 806, 812 (8th Cir. 2017). Plaintiffs' discussion of *May*, a recent case from the Eighth Circuit Court of Appeals involving servicing issues relating to Nationstar, is prejudicial and immaterial to this matter. As they are aware from the case law, Kentucky does not recognize the claim of negligent interference with contractual relations and, therefore, in an effort to prejudice and distract the Court, Plaintiffs have cited an unfavorable and irrelevant case involving Nationstar.

3

Filed            17-CI-00308      05/26/2017              Susan Tierney, Daviess Circuit Clerk

Respectfully submitted,


*/s/ Jennifer A. Pekman*_____
Christy A. Ames
Jennifer A. Pekman
STITES & HARBISON PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
Email: cames@stites.com
        jpekman@stites.com
*Counsel for Defendant, Nationstar Mortgage LLC*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via electronic mail through Kentucky CourtNet and U.S. Mail, postage prepaid, upon the following on this 26th day of May, 2017:

Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303
*Counsel for Plaintiff*


*/s/ Jennifer A. Pekman*_____

4

5B365CF5-7799-41A3-82DB-2ACF820E7166 : 000004 of 000022

RPL : 000004 of 000004

Filed          17-CI-00308     05/26/2017      Susan Tierney, Daviess Circuit Clerk



**User Name:** Jennie Pekman
**Date and Time:** Friday, May 26, 2017 4:00:00 PM EDT
**Job Number:** 48288913

## Document (1)

1. _Tucker v. Heaton, 2015 U.S. Dist. LEXIS 83180_
   **Client/Matter:** zz998
   **Search Terms:** 2015 US Dist LEXIS 83180
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

5B365CF5-7799-41A3-82DB-2ACF820E7166 : 000005 of 000022

OP : 000001 of 000018

Filed          17-CI-00308     05/26/2017      Susan Tierney, Daviess Circuit Clerk

Jennie Pekman

Filed         17-CI-00308     05/26/2017           Susan Tierney, Daviess Circuit Clerk

 Caution
As of: May 26, 2017 8:00 PM Z

# *Tucker v. Heaton*

United States District Court for the Western District of Kentucky, Paducah Division

June 26, 2015, Decided; June 26, 2015, Filed

CIVIL ACTION NO. 5:14-CV-00183-TBR

**Reporter**
2015 U.S. Dist. LEXIS 83180 *; 2015 WL 3935883

ABIGAIL A. TUCKER, Plaintiff, v. RODNEY HEATON, et al., Defendants.

**Prior History:** *Tucker v. Heaton, 2015 U.S. Dist. LEXIS 53880 (W.D. Ky., Apr. 24, 2015)*

## Core Terms

conspiracy, allegations, statute of limitations, defamation, invasion of privacy, indictment, pleadings, cause of action, termination, prosecute, malicious prosecution, defamation claim, conspired, malicious prosecution claim, damages, one-year, intentional interference, probable cause, deprivation, immunity, limitations period, summary judgment, federal law, state law, Memorandum, civil rights, grand jury, maliciously, proceedings, emotional

## Case Summary

### Overview

HOLDINGS: [1]-Where a former employee alleged that defendants caused her to be prosecuted for crimes of which she was innocent and sought to cause her termination, two defendants were immune from any claim founded upon their grand jury testimony; [2]-The employee's conspiracy claim under *42 U.S.C.S. § 1985(3)* and state law failed because, inter alia, she did not offer any facts to support her allegations that defendants acted in concert to violate her rights or that would otherwise support the existence of a shared plan; [3]-The employee's defamation claim against a county magistrate survived because regarding the publication requirement, she alleged that the magistrate engaged in a continuing course of conduct to tell other persons things about her which were not true; [4]-The

employee's invasion of privacy claim was not dismissed as time-barred.

### Outcome
Motion for judgment on the pleadings granted in part and denied in part.

## LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > Judgments > Pretrial Judgments > Judgment on Pleadings

**HN1**[ ] *Fed. R. Civ. P. 12(c)* provides that after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. The court analyzes a *Rule 12(c)* motion for judgment on the pleadings under the same standard as a *Rule 12(b)(6)* motion for failure to state a claim. Therefore, to survive a *Rule 12(c)* motion, a complaint must contain enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Although the plausibility standard is not akin to a "probability requirement," it requires more than a sheer possibility that a defendant has acted unlawfully. The factual allegations in the complaint must raise a right to relief above the speculative level.

Civil Procedure > Judgments > Pretrial Judgments > Judgment on Pleadings

**HN2**[ ] In considering a motion for judgment on the pleadings, the court may examine the complaint and its

Filed         17-CI-00308     05/26/2017           Susan Tierney, Daviess Circuit Clerk
5B365CF5-7799-41A3-82DB-2ACF820E7166 : 000006 of 000022

OP : 000002 of 000018

2015 U.S. Dist. LEXIS 83180, *83180

exhibits, public records, items appearing in the record of the case, and exhibits attached to the motion so long as they are referenced in the complaint and are central to its claims. The court must construe the complaint in the light most favorable to the non-movant, accepting all well-pleaded factual allegations as true—but it need not accept her legal conclusions or unwarranted factual allegations. The motion will be granted only if the movant is entitled to judgment as a matter of law.

Civil Procedure > Judgments > Pretrial Judgments > Judgment on Pleadings

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > Judgments > Summary Judgment > Motions for Summary Judgment

*HN3*[⬇] See *Fed. R. Civ. P. 12(d)*.

Civil Procedure > Judgments > Summary Judgment > Motions for Summary Judgment

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN4*[⬇] Courts may convert a motion to dismiss into one for summary judgment so long as the parties are not likely to be surprised by the proceedings.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN5*[⬇] District courts have complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a *Fed. R. Civ. P. 12(b)(6)* motion.

Civil Procedure > Preliminary Considerations > Removal > Procedural Matters

*HN6*[⬇] Federal—not state—pleading standards apply to state law actions that have been removed to federal court. *Fed. R. Civ. P. 81(c)(1)* provides that the Rules apply to a civil action that is removed from state court.

Governments > State & Territorial Governments > Claims By & Against

*HN7*[⬇] Under Kentucky law, because a county is a political subdivision of the state, it is "cloaked" with sovereign or governmental immunity. Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.

Criminal Law & Procedure > Commencement of Criminal Proceedings > Grand Juries > Witnesses

Civil Rights Law > Protection of Rights > Immunity From Liability > Judicial & Quasi-Judicial Functions

*HN8*[⬇] Both federal and state law establish that grand jury witnesses enjoy absolute immunity from civil suits based on their testimony. A grand jury witness should enjoy the same immunity as witnesses at trial. The testimony a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him.

Civil Rights Law > Protection of Rights > Conspiracy Against Rights

*HN9*[⬇] *42 U.S.C.S. § 1985(3)* addresses conspiracies to interfere with civil rights.

Civil Rights Law > Protection of Rights > Conspiracy Against Rights > Elements

*HN10*[⬇] See *42 U.S.C.S. § 1985(3)*.

Civil Rights Law > Protection of Rights > Conspiracy Against Rights

Civil Rights Law > Protection of Rights > Procedural Matters > Statute of Limitations

*HN11*[⬇] Because *42 U.S.C.S. § 1985* does not contain a statute of limitations, a federal district court must apply the statute of limitations of the state where it sits which would be applicable in the most closely analogous state action to determine the time within which the cause of action must be commenced.

5B365CF5-7799-41A3-82DB-2ACF820E7166 : 000007 of 000022

OP : 000003 of 000018

2015 U.S. Dist. LEXIS 83180, *83180

Civil Rights Law > Protection of Rights > Procedural Matters > Statute of Limitations

Civil Rights Law > Protection of Rights > Conspiracy Against Rights

Torts > ... > Concerted Action > Civil Conspiracy > Defenses

**HN12**[⬇] In the context of *Ky. Rev. Stat. Ann. § 413.140(1)(c)*, the limitations period commences only when the last overt act performed in compliance with the objective of the conspiracy has been accomplished.

Civil Rights Law > Protection of Rights > Procedural Matters > Statute of Limitations

**HN13**[⬇] A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation. The argument that ongoing incarceration constituted a continuing tort has been rejected. The argument that *42 U.S.C.S. § 1983* claims may not contain more than one cause of action has been rejected. The argument that a conspiracy's continuance beyond the date when injury or damage occurs extends the statute of limitations in a *§ 1983* action has been rejected.

Torts > ... > Concerted Action > Civil Conspiracy > Elements

Civil Rights Law > Protection of Rights > Conspiracy Against Rights > Elements

**HN14**[⬇] Kentucky law dictates that to establish a civil conspiracy claim, a plaintiff must allege a corrupt or unlawful combination or agreement between two or more persons who do by concert of action an unlawful act, or to do a lawful act by unlawful means. Federal law is similar. To state a claim for conspiracy to violate civil rights under *42 U.S.C.S. § 1985(3)*, a plaintiff must allege that the defendants (1) conspired together (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy (4) which caused injury to a person or property, or a deprivation of any rights or privileges of a citizen of the United States. Furthermore, the plaintiff must allege that the conspiracy was motivated by racial or other class-based invidiously discriminatory animus.

Civil Rights Law > Protection of Rights > Conspiracy Against Rights > Elements

**HN15**[⬇] Whenever an alleged conspirator's actions are directed against one as an individual, and not because that individual is a member of a particular class, a cause of action under *42 U.S.C.S. § 1985(3)* is not proved.

Civil Rights Law > Protection of Rights > Conspiracy Against Rights > Elements

Torts > ... > Concerted Action > Civil Conspiracy > Elements

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

**HN16**[⬇] It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will be sufficient to state such a claim. In order to demonstrate the necessary conspiracy, a plaintiff must allege specific acts or means by which the defendants were alleged to have conspired.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Rights Law > Protection of Rights > Conspiracy Against Rights

Torts > ... > Multiple Defendants > Concerted Action > Civil Conspiracy

**HN17**[⬇] Twombly deems "labels and conclusions" insufficient. Although a plaintiff need not set out in detail the facts upon which she bases her claim, she must nonetheless make a "showing" of entitlement to relief rather than a "blanket assertion." In the conspiracy context, where a complaint furnishes no clue as to which defendants allegedly agreed or when and where the illicit agreement occurred, it fails to afford the adequate notice required by *Fed. R. Civ. P. 8*.

Torts > Intentional Torts > Defamation > Elements

2015 U.S. Dist. LEXIS 83180, *83180

*HN18*[⬇] Under Kentucky law, the essential elements of defamation include (1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation.

Torts > Intentional Torts > Defamation > Elements

*HN19*[⬇] To state a prima facie defamation claim, a plaintiff must allege that defendants uttered a statement about her and that the statement was defamatory in nature. Although precise quotations are not required, it is impossible to establish either element of the claim without identifying at least the general contours of the statement.

Torts > Intentional Torts > Defamation > Elements

*HN20*[⬇] In the defamation context, publication requires that the words were intentionally or negligently communicated as to be heard by an understanding third party.

Torts > ... > Defamation > Defenses > Statute of Limitations

*HN21*[⬇] According to Kentucky law, the statute of limitations for actions based on libel or slander expires one year after the date of publication. *Ky. Rev. Stat. Ann. § 413.140.*

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Statute of Limitations

Evidence > Burdens of Proof > Allocation

*HN22*[⬇] A plaintiff need not plead that her claim is not time-barred. To the contrary, defendants must assert the running of the statute of limitations as an affirmative defense; they bear the burden of proving that the action is untimely. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Torts > ... > Defamation > Defenses > Statute of Limitations

Torts > Intentional Torts > Defamation > Libel

Torts > Intentional Torts > Defamation > Slander

Torts > Intentional Torts > Invasion of Privacy > Defenses

*HN23*[⬇] The United States Court of Appeals for the Sixth Circuit has concluded that where plaintiffs' claims for libel, slander, and invasion of privacy are based upon the same conduct, the one-year statute of limitation that governs the first two claims also apply to the invasion of privacy claim. The rule is firmly established in Kentucky that a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed.

Torts > Intentional Torts > Invasion of Privacy

*HN24*[⬇] The Kentucky Supreme Court has adopted the definition of "invasion of privacy" established in the Restatement (Second) of Torts (1976). According to this definition, four distinct causes of action for invasion of privacy exist: unreasonable intrusion upon the seclusion of another; appropriation of the other's name or likeness; unreasonable publicity given to the other's private life; or publicity that unreasonably places the other in a false light before the public. Under certain theories, it appears that oral statements may give rise to the tort, as other jurisdictions have recognized. Spoken words may be an actionable invasion of privacy.

Torts > ... > Invasion of Privacy > False Light > Elements

*HN25*[⬇] To prevail on a false light invasion of privacy claim, a plaintiff must demonstrate (1) publicity by the defendant, (2) which is unreasonable, and (3) which attributes to the plaintiff characteristics, conduct or beliefs that are false and that he is placed before the public in a false position.

Torts > ... > Invasion of Privacy > False Light > Elements

*HN26*[⬇] In order to state a cause of action for false light invasion of privacy, the plaintiff must allege that the defendant gave "publicity" to a matter concerning the plaintiff according to the Restatement of Torts, to state a

2015 U.S. Dist. LEXIS 83180, *83180

cause of action consistent with publicity that unreasonably places another in a false light before the public, the plaintiff must allege that the defendant gave "publicity" to a matter concerning the plaintiff—not that he merely "published" the statement, as in a defamation action. "Publicity" as it is used in *Restatement of Torts (Second) § 652D*, differs from "publication" as that term is used regarding defamation. Publication, in that sense, is a word of art which includes any communication by the defendant to a third person. Publicity, on the other hand, means that the matter is made public by communicating it to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Accordingly, one cannot satisfy the publicity requirement based on oral statements made to a small group of individuals.

Torts > Intentional Torts > Malicious Prosecution > Elements

**HN27**[ ] In Kentucky, six basic elements comprise the tort of malicious prosecution: (1) The institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

Torts > Intentional Torts > Malicious Prosecution > Civil Rights Actions

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

Civil Rights Law > Protection of Rights > Section 1983 Actions > Elements

Constitutional Law > ... > Fundamental Rights > Search & Seizure > Scope of Protection

**HN28**[ ] A malicious prosecution claim may lie under federal law. The United States Court of Appeals for the Sixth Circuit recognizes a constitutionally cognizable claim of malicious prosecution under the *Fourth Amendment* encompassing wrongful investigation, prosecution, conviction, and incarceration. To prevail on such a claim, a plaintiff must prove four elements. First,

the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a *42 U.S.C.S. § 1983* claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in the Sixth Circuit's *Fourth Amendment* jurisprudence. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. A plaintiff need not demonstrate malice in order to prevail on a *Fourth Amendment* claim for malicious prosecution.

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

Torts > Intentional Torts > Malicious Prosecution > Civil Rights Actions

**HN29**[ ] Malicious prosecution claims are not limited to charging officials. The United States Court of Appeals for the Sixth Circuit has held that an investigating officer who influenced or participated in the decision to prosecute may also be subject to liability. If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.

Constitutional Law > ... > Fundamental Rights > Search & Seizure > Probable Cause

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

**HN30**[ ] As to a federal claim, it has long been settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer. Regarding the argument that where a grand jury was misled by false testimony, the indictment was not "fair upon its face," Sixth Circuit precedent rejects this very argument.

Constitutional Law > ... > Fundamental Rights > Search &

2015 U.S. Dist. LEXIS 83180, *83180

Seizure > Probable Cause

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

**HN31**[ ] Although a grand jury indictment raises a presumption of probable cause, Kentucky precedents reflect that a plaintiff may rebut this presumption. An acquittal opens the question so as to give the party prosecuted an opportunity, in an action for malicious prosecution, to offer evidence to repel the presumption growing out of the action of the grand jury.

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

**HN32**[ ] In the malicious prosecution context, dismissal for technical or procedural reasons unrelated to the merits of the case does not constitute favorable termination of the action.

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

Torts > Intentional Torts > Malicious Prosecution > Civil Rights Actions

**HN33**[ ] Dismissal of a case—whether it be with or without prejudice—constitutes a "final termination" for purposes of the tort of malicious prosecution. Dismissal by the prosecuting authorities or by the prosecutor himself, and without the voluntary procurement of the defendant in the prosecution constitutes a final termination for purposes of a malicious prosecution suit.

Civil Rights Law > Protection of Rights > Procedural Matters > Statute of Limitations

**HN34**[ ] The statute of limitations for *42 U.S.C.S. § 1983* actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose. In Kentucky, such actions are limited to the one-year period established by *Ky. Rev. Stat. Ann. § 413.140(1)(a)*. While state law establishes the statute of limitations for such actions, federal law dictates when the statute of limitations begins to run. According to federal law, the *§ 1983* statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in her

complaint.

Torts > ... > Contracts > Intentional Interference > Defenses

**HN35**[ ] In the context of a claim of intentional interference with a known contractual relationship, Kentucky law does not establish a specific time limit for this claim. However, the rule is firmly established that a statute of limitations applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed.

Torts > ... > Contracts > Intentional Interference > Elements

**HN36**[ ] Although Kentucky law recognizes the tort of intentional interference, recovery under this theory is limited to situations in which a defendant causes a third party to breach its contract with the plaintiff. The Commonwealth does not permit recovery for intentional interference with one's performance of her own contract. Kentucky is reluctant to adopt new business torts involving parties in contractual relationships.

Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements

**HN37**[ ] Kentucky law recognizes the tort of outrageous conduct, also known as intentional infliction of emotional distress. The Kentucky Supreme Court has adopted *Restatement (Second) of Torts § 46(1)*, which provides that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. In recognizing the tort of intentional infliction of emotional distress, the Kentucky Supreme Court has adopted a cause of action for severe emotional distress, caused by truly outrageous behavior, where there was no remedy because the victim did not have an injury directly to his person or intangible personal attributes such as reputation.

Torts > Intentional Torts > Intentional Infliction of Emotional Distress

**HN38**[ ] In rare occasions, an intentional infliction of emotional distress (IIED) claim can stand alone—but

5B365CF5-7799-41A3-82DB-2ACF820E7166 : 000011 of 000022

OP : 000007 of 000018

2015 U.S. Dist. LEXIS 83180, *83180

only if the alleged conduct was intended only to cause extreme emotional distress in the victim. Generally speaking, it is a "gap-filler tort." That is, where the alleged conduct makes out a claim for another tort for which emotional distress damages are available, IIED is not a valid cause of action. IIED is not a valid cause of action where the alleged conduct makes out a claim for another tort for which emotional distress damages are available. Accordingly, a plaintiff may not plead an intentional infliction of emotional distress claim if another tort also contemplates the emotional damages she seeks.

Torts > Intentional Torts > Malicious Prosecution > Remedies

Torts > ... > Defamation > Remedies > Damages

**HN39[** **]** Regarding malicious prosecution and defamation claims, emotional distress damages are available for each of these classic torts.

**Counsel:** **[*1]** For Abigail A. Tucker, Plaintiff: William G. Deatherage, Jr., LEAD ATTORNEY, Deatherage, Myers & Lackey, PLLC, Hopkinsville, KY.

For Rodney Heaton, Individually and as a Magistrate of Caldwell County, KY, Defendant: Serieta G. Jaggers, LEAD ATTORNEY, Jaggers Law Office, Princeton, KY; Stacey A. Blankenship, LEAD ATTORNEY, Denton & Keuler, LLP, Paducah, KY.

For Bobby Lewis, Individually and as a Magistrate of Caldwell County, KY, Brock Thomas, Individually and as Judge-Executive of Caldwell County, KY, Donna Thomas, Individually as an employee of Caldwell County, KY, Caldwell County, Kentucky, Defendants: Stacey A. Blankenship, LEAD ATTORNEY, Denton & Keuler, LLP, Paducah, KY.

For Clifford West, Individually and as an Investigator/Detective for the Commonwealth of KY, Defendant: Shandeep J. Dutta, LEAD ATTORNEY, Kentucky Attorney General, Frankfort, KY.

For Don Weedman, Individually and as Chief of the Princeton, Kentucky, Police Department, City of Princeton, Kentucky, Defendants: James R. Coltharp, Jr., James A. Sigler, LEAD ATTORNEYS, Whitlow, Roberts, Houston & Straub, PLLC, Paducah, KY.

**Judges:** Thomas B. Russell, Senior United States District Judge.

**Opinion by:** Thomas B. Russell

# Opinion

## MEMORANDUM OPINION AND ORDER [*2]

This matter comes before the Court upon the motion for judgment on the pleadings filed by Defendants Rodney Heaton, Bobby Lewis, Brock Thomas, and Caldwell County, Kentucky. (Docket No. 14.) Plaintiff Abigail A. Tucker has responded, (Docket No. 15), and Defendants have replied, (Docket No. 16). Fully briefed, the matter stands ripe for adjudication. For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART Defendants' motion.

## Factual Background

As stated in the Court's previous Memorandum Opinion, Tucker was previously employed by both Caldwell County, Kentucky, as an animal control officer and by the City of Princeton, Kentucky, as a police officer. On June 22, 2012, a Caldwell Circuit grand jury indicted her with Abuse of Public Trust and Tampering with Public Records. Approximately three months later, the circuit court dismissed the indictment without prejudice. (Docket No. 1-1 at 5.) Both Caldwell County and the City of Princeton subsequently terminated Tucker's employment in December 2012.

In her complaint, Tucker alleges that Defendants conspired to "intimidate, embarrass, [and] defame" her, ultimately seeking to cause Tucker's termination from employment. She **[*3]** asserts that Defendants accomplished this by causing her to be prosecuted for crimes of which she was innocent. (Docket No. 1-1 at 4-5.) While her allegations provide little specificity, she directly contends that West caused grand jury witnesses to believe untrue statements about her in an effort to procure false testimony. (Docket No. 1-1 at 5.) She further submits that Brock Thomas and Donna Thomas provided untrue testimony to the grand jury. (Docket No. 1-1 at 5.)

Tucker names as Defendants the City of Princeton, Caldwell County, and various public officials, including Caldwell County Magistrate Rodney Heaton, Caldwell County Magistrate Bobby Lewis, Caldwell County Judge-Executive Brock Thomas, Princeton Chief of Police Don Weedman, Caldwell County employee Donna Thomas, and Clifford West, an investigator and detective for the Commonwealth of Kentucky's Fifty-

2015 U.S. Dist. LEXIS 83180, *3

Sixth Judicial Circuit. She raises eight claims: (1) vicarious liability against Caldwell County and Princeton; (2) conspiracy against Heaton, Lewis, Brock Thomas, West, Donna Thomas, and Weedman; (3) invasion of privacy against all Defendants; (4) defamation against Heaton and Lewis; (5) malicious prosecution against Heaton, [*4] Lewis, Brock Thomas, West, and Donna Thomas; (6) violation of civil rights against all Defendants; (7) intentional interference against Heaton, Lewis, Brock Thomas, West, and Donna Thomas; and (8) outrageous conduct against Heaton, Lewis, Brock Thomas, West, Donna Thomas, and Weedman. (*See* Docket No. 1-1.)

**Legal Standard**

*HN1*[ ] *Rule 12(c) of the Federal Rules of Civil Procedure* provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court analyzes a *Rule 12(c)* motion for judgment on the pleadings under the same standard as a *Rule 12(b)(6)* motion for failure to state a claim. *Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)*. Therefore, to survive a *Rule 12(c)* motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. " A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations in the complaint must "raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*.

*HN2*[ ] In considering a motion for judgment [*5] on the pleadings, the Court may examine the complaint and its exhibits, public records, items appearing in the record of the case, and exhibits attached to the motion so long as they are referenced in the complaint and are central to its claims. *Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)*. The Court must construe the complaint in the light most favorable to the non-movant, accepting all well-pleaded factual allegations as true—but it need not accept her legal conclusions or unwarranted factual allegations. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007)*. The motion will be granted only if the movant is entitled to judgment as a

matter of law. *Id.*

Although the pleadings have closed and Defendants' motion is timely, their reply memorandum references portions of certain discovery materials—namely, a timeline of events that Tucker generated in response to Defendants' first set of interrogatories. Defendants have included this timeline as an exhibit to their reply memorandum. (*See* Docket No. 16-1.) Defendants rely upon his extraneous material in support of their argument that Tucker failed to satisfy the relevant statutes of limitations for several of her claims. Because this document is neither cited nor referenced in the pleadings, the Court must either reject the evidence [*6] or treat the motion as one for summary judgment. *Fed. R. Civ. P. 12(d)* *HN3*[ ] "If, on a motion under *Rule 12(b)(6)* or *12(c)*, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under *Rule 56*."); *see also Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc., 452 F.3d 494 (6th Cir. 2006)* ("Because Plaintiff presented matters outside the pleadings with respect to Defendant's 12(c) motion, and because the district court did not exclude these matters, the district court should have converted the *Rule 12(c)* motion to a motion for summary judgment.").

*HN4*[ ] Courts may convert a motion to dismiss into one for summary judgment so long as the parties are not "likely to be surprised by the proceedings." *See Salehpour v. Univ. of Tennessee, 159 F.3d 199, 204 (6th Cir. 1998)*. Here, the Court is confident that Tucker was aware of the motion's conversion and was afforded a reasonable opportunity to respond to the extraneous material. Defendants expressly addressed this matter in the reply memorandum they submitted in late January, leaving Tucker ample time to seek leave to file a surreply, had she so desired. Nonetheless, the Court declines to consider Defendants' extraneous evidence at this stage. The timeline offers limited value at this stage, and the Court is unwilling to base a finding of summary judgment exclusively upon that [*7] document. Moreover, the docket reflects that the parties have scheduled numerous depositions to occur throughout July and August. The Court will permit the parties to continue engaging in discovery on Tucker's claims, as set forth below. Because the Court finds that conversion to summary judgment would be imprudent, it will not consider the timeline that accompanies Defendants' reply. *See Barrett v. Harrington, 130 F.3d 246, 253 (6th Cir. 1997)* (holding that *HN5*[ ] district courts have "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered

Filed    Case 4:17-cv-00074-JHM-HBB    Document 1-3    Filed 06/02/17    Page 66 of 89 PageID #: 75
        17-CI-00308    05/26/2017    Susan Tierney, Daviess Circuit Clerk

Page 9 of 17

2015 U.S. Dist. LEXIS 83180, *7

in conjunction with a *Rule 12(b)(6)* motion.").

Finally, the Court again notes that contrary to Tucker's understanding, **HN6**[⬆] federal—not state—pleading standards apply to state law actions that have been removed to federal court. As more fully explained in the Court's prior Memorandum Opinion, *Federal Rule of Civil Procedure 81(c)(1)* provides that the Rules "apply to a civil action that is removed from state court." (*See* Docket No. 23, Memorandum Opinion.) Accordingly, the Court will consider Tucker's complaint under the federal pleading standards rather than those applied in Kentucky courts.

**Analysis**

**I. The Court will dismiss Tucker's state law tort claims against Caldwell County and against Heaton, Lewis, Brock Thomas, [*8] and Donna Thomas in their official capacities pursuant to the doctrine of sovereign immunity**.

Relying upon the doctrine of sovereign immunity, Defendants first move the Court to dismiss Tucker's claims against Caldwell County and against Heaton, Lewis, Brock Thomas, and Donna Thomas in their official capacities. (Docket No. 14-1 at 4.) Tucker does not contest that well-settled principles of Kentucky law dictate this outcome. (Docket No. 15 at 5-6.) *See Jones v. Cross, 260 S.W.3d 343, 345 (Ky. 2008)* (**HN7**[⬆]) "Because the county is a political subdivision of the state, it is 'cloaked' with sovereign or governmental immunity.") (citation omitted); *Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)* ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."). The Court will therefore dismiss these claims.

**II. The Court will dismiss claims against Brock Thomas and Donna Thomas based on their allegedly false grand jury testimony**.

Defendants also move for the dismissal of Tucker's claims against Brock Thomas and Donna Thomas based on their allegedly false grand jury testimony. Tucker concedes that **HN8**[⬆] both federal and state law establish that grand jury witnesses enjoy absolute immunity from civil suits based on their [*9] testimony. *See Rehberg v. Paulk, 132 S. Ct. 1497, 182 L. Ed. 2d 593 (2012)* (concluding that a grand jury witness should enjoy the same immunity as witnesses at trial); *Reed v. Isaacs, 62 S.W.3d 398 (Ky. Ct. App. 2000)* ("[T]he

testimony a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him.") (internal citation omitted). The Court therefore finds that Brock Thomas and Donna Thomas are immune from any claim founded upon their testimony.

**III. The Court will dismiss Tucker's conspiracy claim**.

Tucker alleges that Heaton, Lewis, Brock Thomas, West, Donna Thomas, and Weedman conspired to maliciously prosecute her and cause her to be terminated from her employment. The Court presumes that she raises these claims under both state and federal law.[1] Defendants move the Court to dismiss this claim pursuant to both the one-year statute of limitations and to the pleading standards articulated in the Federal Rules of Civil Procedure. The Court will address each of these arguments in turn.

The Court first considers Defendants' statute of limitations argument. Defendants assert that Tucker's conspiracy claim is untimely pursuant to the one-year statute of limitations for conspiracy established by *KRS 413.140(1)(c)*, which also governs federal claims. *See Parrish v. Wilson, 1998 U.S. Dist. LEXIS 23513, 1998 WL 34201913 at *2 (W.D. Ky. Apr. 16, 1998)* (**HN11**[⬆]) "Because *42 U.S.C. § 1985* does not contain a statute of limitations, a federal district court must apply the statute of limitations of the state where [*11] it sits which

---

[1] Tucker's complaint does not make clear her legal basis for proceeding with a federal conspiracy claim. However, in response to Defendants' motion, she mentions **HN9**[⬆] *42 U.S.C. § 1985(3)*, which addresses conspiracies to interfere with civil rights. The Court will therefore assume that she [*10] raises her claim pursuant to that statute, which provides, in relevant part:

**HN10**[⬆] If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Jennie Pekman

would be applicable in the most closely analogous state action to determine the time within which the cause of action must be commenced."). *HN12*[ ] The limitations period commences only when the "'last overt act performed in compliance with the objective of the conspiracy has been accomplished.'" *Parrish, 1998 U.S. Dist. LEXIS 23513, 1998 WL 34201913 at *2*.

Defendants submit that Tucker has alleged only two overt acts: Brock Thomas's and Donna Thomas's provision of allegedly false grand jury testimony. Tucker has identified no actions of the alleged conspiracy that occurred after her indictment. Assuming that the Thomas Defendants' testimony constitutes the "last overt act," Defendants reason that the conspiracy necessarily occurred before Tucker's indictment on June 22, 2012. Because Tucker filed her complaint on September 2, 2014—more than one year after the date of the indictment—Defendants conclude that she failed to timely assert her claim.

Tucker insists that she has alleged numerous other "specific and overt" acts undertaken in furtherance of the conspiracy. (*See* Docket No. 15 at 7-8.) She offers with but one example: her contention that the individual Defendants "embarked on a campaign, and took actions, to intimidate, embarrass, [*12] defame, and maliciously prosecute [Tucker] for crimes that [Tucker] did not commit." (*See* Docket No. 15 at 7-8; Docket No. 1-1 at 4.) These conclusory allegations shed little light. However, also Tucker directs the Court to her complaint that the individual Defendants conspired "to cause [her] to be maliciously and wrongfully charged and prosecuted for two felony offenses *and* to have [her] terminated from her employment with Caldwell County and Princeton." (Docket No. 1-1 at 8 (emphasis added)). Tucker argues that her use of the conjunctive "and" indicates that the conspiracy's objectives were not limited to securing criminal charges, but also to cause Tucker's termination, humiliation, and defamation. Of course, any continued harm she has suffered as a result of the initial conspiracy does not alter the limitations period. *See McCune v. City of Grand Rapids, 842 F.2d 903, 906 (6th Cir. 1988).*[2] However, the Defendants'

alleged defamation of Tucker and termination of her employment may constitute overt acts that were committed in furtherance of the conspiracy. Because the pleadings do not indicate that either the defamation or termination necessarily occurred outside the limitations period, Tucker's complaint need not be dismissed as time-barred.

However, Tucker nonetheless fails to state a claim for conspiracy. *HN14*[ ] Kentucky law dictates that to establish a civil conspiracy claim, a plaintiff must allege "a corrupt or unlawful combination or agreement between two or more persons who do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co., 277 S.W.3d 255, 261 (Ky. Ct. App. 2008)* (quoting *Smith v. Bd. of Educ. of Ludlow, Ky., 264 Ky. 150, 94 S.W.2d 321, 325 (1936))*. Federal law is similar. To state a claim for conspiracy to violate civil rights under *§ 1985(3)*, a plaintiff must allege that the defendants (1) conspired together (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy (4) which caused injury to a person or property, or a deprivation of any rights or privileges of a citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir. 1994)*; *see also Moniz v. Cox, 512 Fed. App'x 495, 499-500 (6th Cir. 2013)*. Furthermore, the plaintiff must allege that the conspiracy was motivated by racial or other class-based invidiously discriminatory animus.

Turning first to Tucker's *§ 1985(3)* claim, the Court notes that Tucker has alleged no facts that would indicate that either the allegedly false testimony or the broader conspiracy resulted from Defendants' racial animus.

rejected Appellant McCune's argument that his injuries resulted from a continuing tort. *Id. at 905-06* (citing *Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981)* (reasoning that *HN13*[ ] "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation"); *Sanduch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982)* (rejecting argument that ongoing incarceration constituted a continuing tort); *Singleton v. City of New York, 632 F.2d 185, 191 & n. 5 (2d Cir. 1980)*, *cert. denied, **450 U.S. 920, 101 S. Ct. 1368, 67 L. Ed. 2d 347 (1981)*** (rejecting argument that *section 1983* claims may not contain more than one cause of action and holding that numerous claims under *section 1983* may have accrued on the same date); *Compton v. Ide, 732 F.2d 1429, 1432-33 (9th Cir. 1984)* (rejecting argument that a conspiracy's continuance beyond the date when injury or damage occurs extends the statute of limitations in a *Section 1983* action)).

[2] [*13] In *McCune*, the Sixth Circuit considered whether actions that resulted in an individual's "wrongful arrest, wrongful incarceration, wrongful criminal prosecution, and wrongful suppression of exculpatory evidence" constituted a continuing tort for purposes of determining when his **Section 1983** cause of action accrued. Looking to the reasoning of sister circuits that confronted this question, the Sixth Circuit

2015 U.S. Dist. LEXIS 83180, *13

Only one **[*14]** line of the complaint refers to racial issues: she contends that Lewis referred to her as a "Mexican whore." (Docket No. 1-1 at 6.) Even assuming that this comment—about which no additional detail is provided—evinced an invidiously discriminatory motivation on Lewis's part, the complaint does not reflect that the other alleged conspirators shared his view. Moreover, Tucker does not suggest that Lewis acted jointly with any other Defendant to deprive her of equal protection due to her perceived ethnicity. **HN15**[↑]] "[W]henever an alleged conspirator's actions are directed against one as an individual, and not because that individual is a member of a particular class, a cause of action under *§ 1985(3)* is not proved." *Weiss v. Patrick, 453 F. Supp. 717, 724 (D.R.I. 1978)*, aff'd, 588 F.2d 818 (1st Cir. 1978), cert. denied, 442 U.S. 929, 99 S. Ct. 2858, 61 L. Ed. 2d 296. Tucker's allegations are insufficient as a matter of law to establish a *§ 1985* violation.

Furthermore, **HN16**[↑] it is "well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will be sufficient to state such a claim." *Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987)* (discussing *§ 1983* conspiracy claims); *accord Pahssen v. Merrill Cmty. Sch. Dist., 668 F.3d 356, 366 (6th Cir. 2012)*, cert. denied, 133 S. Ct. 282, 184 L. Ed. 2d 150 (2012). "[I]n order to demonstrate the necessary conspiracy, a plaintiff must allege specific acts or means by which the defendants **[*15]** were alleged to have conspired." *Bryant-Bruce v. Vanderbilt Univ., Inc., 974 F. Supp. 1127 (M.D. Tenn. 1997)*.

Here, Tucker alleges that the Defendants

> engaged in a conspiracy . . . to cause [her] to be maliciously and wrongfully charged and prosecuted for two felony offenses and to have [her] terminated from her employment with Caldwell County and Princeton, and each assisted, aided, abetted, acted in concert with, and conspired with the others in furtherance of that goal.

(Docket No. 1-1 at 8.) This conclusory allegation consists of naked and indeterminate contentions—the **HN17**[↑] "labels and conclusions" that *Twombly* deems insufficient. *See 550 U.S. at 555*. Although Tucker need not "'set out *in detail* the facts upon which [she] bases [her] claim,'" *id. at n. 3* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*), she must nonetheless make a "showing" of entitlement to relief rather than the "blanket assertion" offered here. *Id.*

*See Twombly, 550 U.S. at 565 n.10* (stating that where "complaint [] furnishes no clue" as to which defendants allegedly agreed or when and where the illicit agreement occurred, it fails to afford the adequate notice required by *Fed. R. Civ. P. 8*); *see also In re Travel Agent Com'n Antitrust Litig., 583 F.3d 896, 905 (6th Cir. 2009)*.

Tucker has identified only two actions approaching the requisite level of specificity: the provision of purportedly false testimony by Brock Thomas and Donna Thomas, who enjoy absolute immunity **[*16]** for such claims. She has failed to offer any facts to support her allegations that Defendants acted in concert to violate her rights or that would otherwise support the existence of a shared plan. Because Tucker has pleaded little more than mere conclusions, her claim is insufficient to state a cause of action for conspiracy and will accordingly be dismissed. *See Brooks v. Am. Broadcasting Companies, Inc., 932 F.2d 495 (6th Cir. 1991)* (affirming denial of motion to amend to add *§ 1985* claim because "the allegations are too vague and conclusory to withstand a motion to dismiss").

**IV. The Court will dismiss Tucker's defamation claim against Heaton but will permit her defamation claim against Lewis to proceed**.

The Court next turns to Tucker's defamation claim. **HN18**[↑] Under Kentucky law, the essential elements of defamation include "(1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation." *Dennison v. Murray State Univ., 465 F. Supp. 2d 733, 749 (W.D. Ky. 2006)* (citing *Columbia Sussex Corp. v. Hay, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981))*. Here, Tucker alleges that Tucker and Lewis "engaged in a continuing course of conduct to tell other persons things about [Tucker] which were not true, and Defendant Lewis referred to Abby as a 'Mexican whore.'" (Docket No. 1-1 at 6.) She pleads no additional facts relevant to this claim.

As to Heaton, Tucker's claim **[*17]** consists of only "a formulaic recitation of the elements of a cause of action" and cannot survive Defendants' motion. *Twombly, 550 U.S. at 555*. **HN19**[↑] To state a *prima facie* defamation claim, Tucker must allege that Defendants uttered a statement about her and that the statement was defamatory in nature. Although precise quotations are not required, it is impossible to establish either element of the claim without identifying at least the general contours of the statement. *See, e.g., Puglise v. Regency Nursing, LLC, No. 3:09-CV-00457, 2009 U.S. Dist.*

5B365CF5-7799-41A3-82DB-2ACF820E7166 : 000016 of 000022

OP : 000012 of 000018

2015 U.S. Dist. LEXIS 83180, *17

LEXIS 87566, 2009 WL 3072900, at *1 (W.D. Ky. Sept. 23, 2009). Tucker has failed to provide any such detail regarding Heaton's alleged statements, in either her complaint or her response to Defendants' motion; she offers nothing of their content, when they may have been made, or to whom Heaton allegedly published them. Such claims are insufficient "to raise a right to relief above the speculative level" and will be dismissed. Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).

Defendants also move to dismiss Tucker's defamation claim against Lewis, arguing that she has failed to establish the publication element of her claim. HN20[↑] "Publication requires that the words were intentionally or negligently communicated as to be heard by an understanding third party." Smith v. Westlake PVC Corp., 132 F.3d 34 (6th Cir. 1997) (citing Columbia Sussex Corp. v. Hay, 627 S.W.2d 270, 272 (Ky. Ct. App. 1981)). The Court cannot agree with [*18] Defendants' conclusion. Although Tucker has not identified the audience of Lewis's purported statements, she alleges that he "engaged in a continuing course of conduct to tell other persons things about [Tucker] which were not true." (Docket No. 1-1 at 6.) At this early stage of litigation, the Court is satisfied that Tucker's allegation sufficiently pleads the publication requirement. Therefore, the Court finds that Tucker has sufficiently made out a prima facie cause of action against Lewis.

Defendants also assert that Tucker's defamation claim is time-barred. HN21[↑] According to Kentucky law, the statute of limitations for actions based on libel or slander expires one year after the date of publication. See KRS § 413.140. Tucker is silent as to when Lewis allegedly published the defamatory statement about her. Nonetheless, Defendants reason that the alleged conduct must have predated Tucker's indictment on June 22, 2012. They therefore conclude that the defamation claim, raised on September 2, 2013, must be dismissed as untimely.

But Tucker's inexactitude does not render her complaint deficient. HN22[↑] A plaintiff need not plead that her claim is not time-barred. To the contrary, Defendants must assert the [*19] running of the statute of limitations as an affirmative defense; they bear the burden of proving that the action is untimely. Campbell v. Grand Trunk Western R. Co., 238 F.3d 772, 775 (6th Cir. 2001). Because the Court can perceive a scenario wherein Tucker might prove that she was defamed within the one-year limitations period, it will not dismiss

her claim. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

## V. Tucker's invasion of privacy claim is time-barred.

Count Three of Tucker's complaint alleges invasion of privacy, stating simply, "The aforementioned actions on behalf of Defendants constituted an unreasonable and unlawful invasion of Abby's right to privacy, as guaranteed by the Kentucky and United States Constitutions." (Docket No. 1-1 at 8.) The parties first disagree as to the statute of limitations that governs this claim.

Defendants contend that the same one-year statute of limitations that governs defamation claims applies here. They rely upon Branham v. Micro Computer Analysts, 350 Fed. Appx. 35, 37 (6th Cir. 2009), wherein HN23[↑] ] the Sixth Circuit concluded that because the plaintiffs' claims for libel, slander, and invasion of privacy were based upon the same [*20] conduct, the one-year statute of limitation that governed the first two claims also applied to the invasion of privacy claim. See also (citing Lashlee v. Sumner, 570 F.2d 107, 109 (6th Cir. 1978) ("The rule is firmly established in Kentucky that a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed."). They reason that because Tucker's invasion of privacy claim springs from the same acts underlying her defamation claim, the same one-year limitations period applies to each.

In response, Tucker rejects not only Defendants' logic but also that of the Sixth Circuit, arguing that Branham misapplied relevant Kentucky precedent. She notes that no Kentucky statute specifically indicates the limitations period for an invasion of privacy action. Instead, she points to state law's provision that actions for "an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated," must be brought within five years of the accrual of the cause of action. KRS § 413.120(7). Tucker therefore concludes that her invasion of privacy claim is subject to a five-year statute of limitations.

The Court is inclined to [*21] agree with Defendants as to the applicable statute of limitations, given Branham's clear guidance and the reliance of both this Court and

2015 U.S. Dist. LEXIS 83180, *21

that of the Eastern District of Kentucky upon it. *See, e.g., Bargo v. Goodwill Indus. of Ky., Inc., 969 F. Supp. 2d 819 (E.D. Ky. 2013); Madison Capital Co., LLC v. S & S Salvage, LLC, 794 F. Supp. 2d 735 (W.D. Ky. 2011).* For the same reasons set forth in the above discussion on defamation, however, the Court is not convinced that the events giving rise to the action necessarily occurred over a year before Tucker filed her complaint. The Court is sympathetic to Defendants' reasoning—Tucker's complaint certainly suggests that the actions she alleges predated her complaint by over a year. However, the Court cannot say that another scenario is altogether impossible. Accordingly, Tucker's complaint will not be dismissed as untimely.

Defendants also urge the Court to dismiss Tucker's invasion of privacy claim on its merits, contending that each of the actions Tucker alleges consist of oral communications and that such exchanges cannot give rise to an invasion of privacy claim. Defendants correctly observe that in 1951, the Kentucky Supreme Court stated that "there can be no grant of redress for the invasion of privacy by oral publication." *Pangallo v. Murphy, 243 S.W.2d 496, 497 (Ky. 1951)* (citing *Brents v. Morgan, 221 Ky. 765, 299 S.W. 967 (Ky. 1927)*. However, the Court is not convinced that this principle **[*22]** strictly governs today.

After *Pangallo,* **HN24**[⬆] The Kentucky Supreme Court adopted the definition of "invasion of privacy" established in the Restatement (Second) of Torts (1976). *McCall v. Courier-Journal & Louisville Times Co., 623 S.W.2d 882, 887 (Ky. 1981).* According to this definition, four distinct causes of action for invasion of privacy exist: unreasonable intrusion upon the seclusion of another; appropriation of the other's name or likeness; unreasonable publicity given to the other's private life; or publicity that unreasonably places the other in a false light before the public. Restatement (Second) of Torts (1976). Though Tucker's chosen theory remains unclear, this distinction plays little role here. Suffice to say that under certain theories, it appears that oral statements may give rise to the tort, as other jurisdictions have recognized. *See, e.g., Winegard v. Larsen, 260 N.W.2d 816, 819 (Iowa 1977)* ("[S]poken words may be an actionable invasion of privacy.").[3]

---

[3] For example, **HN25**[⬆] ] to prevail on a false light invasion of privacy claim, a plaintiff must demonstrate (1) publicity by the defendant, (2) which is unreasonable, and (3) which "attributes to plaintiff characteristics, conduct or beliefs that are false and that he is placed before the public in a false position."

Kentucky's adoption of the Restatement represents an evolution in its understanding of the "invasion of privacy" tort. Accordingly, **[*24]** the precedent of sixty-five years ago upon which Defendants rely may be antiquated. This uncertainty, coupled with the limited scope of the parties' argument on this point, convinces the Court that dismissal Tucker's invasion of privacy claim would be premature. Defendants' motion will be denied as to this claim.

## VI. Tucker's malicious prosecution claim under federal law will be dismissed. The claim raised under Kentucky law may proceed.

Count Five of Tucker's complaint alleges that Heaton, Lewis, Brock Thomas, West, and Donna Thomas "caused, orchestrated, acted in concert with each other and others, and conspired with each other and others to cause . . . [Tucker] to be charged and prosecuted for felony offenses" without probable cause. (Docket No. 1-1 at 9-10.) Tucker states that these criminal charges were ultimately terminated in her favor at the prosecuting attorney's request. (Docket No. 1-1 at 9-10.) Based on these allegations, she seeks damages for malicious prosecution.

**HN27**[⬆] In Kentucky, six basic elements comprise the

*Warriner v. North Am. Sec. Solutions, Inc., 2008 U.S. Dist. LEXIS 44316, 2008 WL 2355727, at *3 (W.D. Ky. June 5, 2008)* (quoting *Stewart v. Pantry, Inc., 715 F. Supp. 1361, 1369 (W.D. Ky. 1988)).*

The Court notes that **HN26**[⬆] ] in order to state **[*23]** a cause of action for false light invasion of privacy, the plaintiff must allege that the defendant gave "publicity" to a matter concerning the plaintiff according to the Restatement of Torts, to state a cause of action consistent with publicity that unreasonably places another in a false light before the public, the plaintiff must allege that the defendant gave "publicity" to a matter concerning the plaintiff—not that he merely "published" the statement, as in a defamation action.

> "Publicity" as it is used in this section, differs from "publication" as that term is used [regarding defamation]. "Publication, in that sense, is a word of art which includes any communication by the defendant to a third person. "Publicity, on the other hand, means that the matter is made public by communicating it to the public at large or to so many persons that the matter must be regarded as *substantially* certain to become one of public knowledge.

3 *Restatement of Torts (Second), § 652D, Comment a.* Accordingly, one cannot satisfy the publicity requirement based on oral statements made to a small group of individuals.

2015 U.S. Dist. LEXIS 83180, *23

tort of malicious prosecution:

> (1) [T]he institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, [*25] (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

*Raine v. Drasin, 621 S.W.2d 895, 899 (Ky. 1981)*.

**HN28**[⬆] A malicious prosecution claim may also lie under federal law. The Sixth Circuit "recognize[s] a . . . constitutionally cognizable claim of malicious prosecution under the *Fourth Amendment*" encompassing "wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright, 449 F.3d 709, 715-16 (6th Cir. 2006)* (internal quotation marks omitted). To prevail on such a claim, a plaintiff must prove four elements.

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute. . . . Second, because a *§ 1983* claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution . . . . Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our *Fourth Amendment* jurisprudence . . . . Fourth, the criminal proceeding must have been resolved in the [*26] plaintiff's favor.

*Sykes v. Anderson, 625 F.3d 294, 308-09 (6th Cir. 2010)* (internal quotations and citations omitted). A plaintiff need not demonstrate malice in order to prevail on a *Fourth Amendment* claim for malicious prosecution. *Id. at 309*.

Defendants first argue that Tucker's allegations fail to allege that they instituted the judicial proceedings against her, opining that the prosecuting attorney who obtained the indictment would have been a more fitting subject of her action. **HN29**[⬆] Malicious prosecution claims are not limited to charging officials, however. The Sixth Circuit has held that an investigating officer who "influence[d] . . . or participate[d] in the decision to

prosecute" may also be subject to liability. *Id.* "If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded." *Id. at 318* (quoting *Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988))*. This logic extends to the local government officials named in Tucker's complaint. Because she is entitled to prove that they played a role in the commencement of the proceedings against her, the Court rejects Defendants' argument.

Defendants next contend that Tucker's [*27] claim must fail as a matter of law, as the grand jury indictment conclusively established the existence of probable cause. Federal and state laws diverge on this point. **HN30**[⬆] As to the federal claim, "it has long been settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'" *Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002)* (quoting *Ex parte United States, 287 U.S. 241, 250, 53 S. Ct. 129, 77 L. Ed. 283 (1932))*. Tucker does not dispute the fact of her indictment; rather, she insists that because the grand jury was misled by false testimony, the indictment was not "fair upon its face." *See id.* But Sixth Circuit precedent rejects this very argument. In *Barnes v. Wright*, Barnes asserted a constitutional malicious prosecution claim; he insisted that the grand jury indicted him only because the defendants had mislead it, causing his improper arrest. The Sixth Circuit determined that Barnes' claim could not survive, as he could not show the absence of probable cause. Because he was indicted pursuant to the grand jury's determination—even if it was a faulty one—he had no basis for a constitutional claim. *Barnes v. Wright, 449 F.3d 709, 716 (6th Cir. 2006)* (citing *Higgason, 288 F.3d at 877*). The same principle applies here. Tucker was indicted pursuant [*28] to the grand jury's determination, which is determinative. Her constitutional claim must be dismissed.

But the grand jury's finding of probable cause does not prove fatal to Tucker's claim under state law. **HN31**[⬆] Although a grand jury indictment raises a presumption of probable cause, Kentucky precedents reflect that a plaintiff may rebut this presumption. *Davidson v. Castner-Knott Dry Goods Co., Inc., 202 S.W.3d 597, 607 (Ky. Ct. App. 2006)* (citing *Conder v. Morrison, 275 Ky. 360, 121 S.W.2d 930, 931-32 (Ky. 1938)*. *See also*

2015 U.S. Dist. LEXIS 83180, *28

*Conder, 121 S.W.2d at 932* ("An acquittal opens the question so as to give the party prosecuted an opportunity, in an action for malicious prosecution, to offer evidence to repel the presumption growing out of the action of the grand jury.") (internal quotation and citation omitted). Accordingly, Tucker's indictment does not necessarily bear upon her malicious prosecution claim under Kentucky law.

Finally, Defendants maintain that the Commonwealth Attorney dismissed the case against Tucker for technical or procedural reasons. Because the case was not resolved on its merits, Defendants contend that Tucker did not receive the determination of innocence necessary to allege a malicious prosecution claim. They point to *Shelton v. City of Taylor*, wherein the Sixth Circuit rejected the malicious prosecution claim asserted by a plaintiff [*29] who pleaded no-contest and paid a fine. "This claim must fail as a matter of law," the court said, "because under the common law a plaintiff may not assert malicious prosecution unless the proceeding has ended in his favor." *92 Fed. App'x 178, 183 (6th Cir. 2004)* (citing *Heck v. Humphrey, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)).* The Sixth Circuit rejected Shelton's argument that his no-contest plea and the subsequent dismissal of the charge constituted an outcome in his favor, characterizing it as an impermissible "legal maneuver" and an "attempt[] to use his compromise with the judicial system to his advantage." *Id.* As such, the court determined that Shelton's plea precluded his malicious prosecution claim.

Tucker's case may yield a different outcome, as the face of her complaint reveals no such legal maneuvering. She does not indicate that the Commonwealth's dismissal of the case against her resulted from a compromise, nor does she suggest that procedural technicalities motivated the dismissal. The Court does not foreclose the possibility that Defendants may ultimately prove such motivations, which would likely prove fatal to Tucker's claims. *See Alcorn v. Gordon, 762 S.W.2d 809, 812 (Ky. Ct. App. 1988)* (finding that **HN32**[⬆] dismissal for technical or procedural reasons unrelated to the merits of the case does not constitute favorable termination [*30] of the action). Dismissal on this basis today, however, would be premature. Moreover, Defendants' emphasis that the case was dismissed without prejudice is of little moment, as **HN33**[⬆] "dismissal of a case—whether it be with or without prejudice—constitutes a 'final termination' for purposes of the tort [of malicious prosecution]." *Davidson v. Castner-Knott Dry Goods Co., Inc., 202*

*S.W.3d 597, 604 (Ky. Ct. App. 2006). See also Davis v. Brady, 218 Ky. 384, 291 S.W. 412, 413 (Ky. 1927)* (establishing that "dismissal by the prosecuting authorities or by the prosecutor himself, and without the voluntary procurement of the defendant in the prosecution" constitutes a final termination for purposes of a malicious prosecution suit). Accordingly, Tucker's claim for malicious prosecution under state law survives Defendants' motion and will be allowed to proceed.

## VII. Tucker's claims for violation of civil rights may proceed.

Defendants next move the Court to dismiss Tucker's claims for violation of her civil rights pursuant to *42 U.S.C. § 1983* and Kentucky law. **HN34**[⬆] The statute of limitations for *§1983* actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007).* In Kentucky, such actions are limited to the one-year period established by *KRS § 413.140(1)(a). Collard v. Ky. Bd. of Nursing, 896 F.2d 179, 182 (6th Cir. 1990).* While state law establishes the statute of limitations for such actions, [*31] federal law dictates when the statute of limitations begins to run. *Sevier v. Turner, 742 F.2d 262, 272 (6th Cir. 1984).* According to federal law, the *§ 1983* statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in her complaint. *Ruff v. Runyon, 258 F.3d 498, 500 (6th Cir. 2001).*

Here, it is unclear when Tucker became aware of the alleged wrongful conduct that forms the basis of this claim—or indeed, precisely which conduct precipitates the claim at all. In any event, though, the Court cannot say unequivocally that all allegedly wrongful conduct occurred prior to Tucker's indictment on June 22, 2012. As such, it is not apparent that Tucker failed to seek timely relief for the alleged civil rights violations. Her claim will not be dismissed on this basis.

## VIII. Tucker's claim for intentional interference with a known contractual relationship will be dismissed.

Count Seven of Tucker's complaint alleges that Heaton, Lewis, Brock Thomas, West, and Donna Thomas committed intentional interference with a known contractual relationship by jeopardizing her employment with Princeton and Caldwell County. **HN35**[⬆] Kentucky law does not establish a specific time limit for this claim. However, as discussed above, "[t]he rule is firmly established [*32] that a statute of limitations applies to

Filed    Case 4:17-cv-00074-JHM-HBB    Document 1-3    Filed 06/02/17    Page 73 of 89 PageID #: 82
17-CI-00308    05/26/2017    Susan Tierney, Daviess Circuit Clerk

Page 16 of 17

2015 U.S. Dist. LEXIS 83180, *32

all actions founded on that tort regardless of the method by which it is claimed the tort has been committed." *Lashlee, 570 F.2d at 109* (citing *Skaggs v. Stanton, 532 S.W.2d 442) (Ky. 1975)).*

Tucker's claims are similar to those of *Lashlee,* where the "underlying wrong with which the complaint alleges [was] defamation by publication of a libelous report, and the claim of injury set out in each count springs from the act of publication." *Id. at 109.* That is, Tucker's "real purpose is to recover for the injury" of the alleged defamation against her. *Id.* Her damages for intentional interference arise from the injury that she suffered when the Defendants allegedly defamed her. *See McIntosh v. E-Backgroundchecks.com, Inc., No. 5:12-310-DCR, 2013 U.S. Dist. LEXIS 41470, 2013 WL 1187038 (E.D. Ky. Mar. 20, 2013)* (citing *Branham, 350 Fed. App'x 35; Kindoll v. Gonterman, No. 2003-CA-002561-MR, 2005 Ky. App. Unpub. LEXIS 43, 2005 WL 386880 (Ky. Ct. App. February 18, 2005)* (upholding the application of a one-year statute of limitations for a tortious interference claim as it was based on an underlying defamation claim). Accordingly, the one-year statute of limitations applies to this count. As discussed above, however, the date of the alleged defamation is unclear. The Court cannot say with confidence that Tucker's claim is indisputably time-barred.

However, substance of Tucker's claim **[*33]** compels its dismissal. Tucker seeks to recover for interference with her own performance of her employment contracts. (*See* Docket No. 1-1 at 12 ("As a result of the intentional interference by said Defendants, [Tucker's] position as a Police Office for the City of Princeton was terminated, and she was unable to fulfill her contractual obligations.").) **HN36[↑]** Although Kentucky law recognizes the tort of intentional interference, recovery under this theory is limited to situations in which a defendant causes a third party to breach its contract with the plaintiff. *See CMI, Inc. v. Intoximeters, Inc., 918 F. Supp. 1068, 1079 (W.D. Ky. 1995).* The Commonwealth does not permit recovery for intentional interference with one's performance of her *own* contract. *Id. at 1079-80.* As this Court has explained, Kentucky is reluctant to adopt new business torts involving parties in contractual relationships. *Id. at 1080.* The Court does not anticipate that the Commonwealth's courts would do so under these circumstances. Accordingly, Tucker's claim will be dismissed.

## IX. The Court will permit Tucker's claim for intentional infliction of emotional distress to proceed.

Finally, the Court turns to Tucker's claim alleging outrageous conduct. Tucker contends that Heaton, Lewis, Brock Thomas, West, Donna Thomas, **[*34]** and Weedman engaged in conduct that was "extreme and outrageous in that it was intentional, malicious, and grossly reckless, and it offends the generally accepted standards of decency and morality." (Docket No. 1-1 at 13.) She seeks damages to compensate her for this allegedly outrageous conduct.

**HN37[↑]** Kentucky law recognizes the tort of outrageous conduct, also known as intentional infliction of emotional distress (IIED). *See Craft v. Rice, 671 S.W.2d 247, 249 (Ky. 1984).* The Kentucky Supreme Court has adopted *Section 46(1) of the Restatement (Second) of Torts,* which provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." *Id. at 251.* In recognizing the tort of intentional infliction of emotional distress, the Kentucky Supreme Court adopted a cause of action "for severe emotional distress, caused by truly outrageous behavior, where there was no remedy because the victim did not have an injury directly to his person or intangible personal attributes such as reputation." *Childers v. Geile, 367 S.W.3d 576, 581 (Ky. 2012).*

**HN38[↑]** In rare occasions, an IIED claim can stand alone—but only if the alleged conduct was "intended only to cause extreme emotional distress in the victim." *Brewer v. Hillard, 15 S.W.3d 1, 8, 46 11 Ky. L. Summary 1 (Ky. Ct. App. 2000).* Generally speaking, it is a "gap-filler tort." **[*35]** *Childers, 367 S.W.3d at 581.* That is, "[w]here the alleged conduct makes out a claim for another tort for which emotional distress damages are available, IIED is not a valid cause of action . . . ." *Farmer v. Dollar Gen. Corp., No. 4:11-CV-00027-JHM, 2012 U.S. Dist. LEXIS 136117, 2012 WL 4364108, at *7 (W.D. Ky. Sept. 24, 2012)* (citing *Rigazio v. Archdiocese of Louisville, 853 S.W.2d 295, 298-99 (Ky. App. 1993)).* IIED is not a valid cause of action where the alleged conduct makes out a claim for another tort for which emotional distress damages are available. *See Banks v. Fritsch, 39 S.W.3d 474 (Ky. Ct. App. 2001)* (affirming a directed verdict for defendant on intentional infliction claim where plaintiff could theoretically recover emotional damages arising from false imprisonment, assault, or battery). Accordingly, a plaintiff may not plead an intentional infliction of emotional distress claim if another tort also contemplates the emotional damages she seeks.

2015 U.S. Dist. LEXIS 83180, *35

The Court is skeptical that Tucker's IIED claim will survive a motion for summary judgment, as she must offer evidence that Defendants acted solely to cause her extreme emotional distress. Moreover, the facts that underlie this claim appear to be synchronous with those upon which she bases her *HN39*[⬆] malicious prosecution and defamation claims. Emotional distress damages are available for each of these classic torts. *See, e.g.,* *McCoy v. RWT, Inc., Nos. 2003-CA-002177-MR, 2003 —CA-002241-MR, 2005 Ky. App. Unpub. LEXIS 588, 2005 WL 1593651 (Ky. Ct. App. July 8, 2005),* **[*36]** *rev'd on other grounds,* 244 S.W.3d 44 (Ky. 2008) (explaining that an IIED claim was inappropriate because defamation and malicious prosecution allow for emotional damages). However, given the liberal standard applied at the motion to dismiss phase, the Court will allow Tucker's claim to proceed through the discovery process.

**CONCLUSION AND ORDER**

Defendants Rodney Heaton, Bobby Lewis, Brock Thomas, and Donna Thomas, in their official and individual capacities, and Caldwell County, Kentucky, having filed a motion for judgment on the pleadings, Plaintiff Abigail Tucker having responded and Defendants having replied, and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that in accordance with the reasons set forth above, Defendants' motion, (Docket No. 14), is GRANTED IN PART and DENIED IN PART. The Court hereby DISMISSES Tucker's claims for conspiracy, defamation as to Heaton, malicious prosecution under federal law, and intentional interference with a known contractual relationship. Tucker's claims for defamation against Lewis, invasion of privacy, malicious prosecution under state law, intentional infliction of emotional distress, and for violation of her civil rights may proceed. **[*37]**

IT IS SO ORDERED.

June 26, 2015

/s/ Thomas B. Russell

**Thomas B. Russell, Senior Judge**

**United States District Court**

---

A08A9763-1582-4989-8E99-B57241F9F240 : 000001 of 000013

*Electronically Filed*

**COMMONWEALTH OF KENTUCKY**
**DAVIESS CIRCUIT COURT, DIVISION II**
**CIVIL ACTION NO. 17-CI-00308**

JOHN D. JOHNSON                                        PLAINTIFFS
 and
LISA R. JOHNSON

v.

NATIONSTAR MORTGAGE, LLC                          DEFENDANT

**FIRST AMENDED COMPLAINT**

    The Plaintiffs, John D. Johnson and  Lisa R. Johnson, ("Plaintiffs") by and through

counsel, state the following for their First Amended Complaint:

**Parties**

    1.    John D. Johnson and Lisa R. Johnson reside at 10624 Highway 951 Hawesville,

KY 42348.

    2.    The Defendant, Nationstar Mortgage, LLC, (NMLLC) is a Foreign limited

liability company with its  Principal Office located at, 8950 Cypress Waters Blvd, Coppell, TX

75019. It is registered with the Kentucky Secretary of State and conducts business in the state of

Kentucky and is subject to the jurisdiction of this court.

**Factual Allegations**

    3.    By deed dated February 15, 2002, the Plaintiffs acquired the real estate located at

10624 Highway 951 Hawesville, KY 42348. The real estate is situated in Daviess County,

A08A9763-1582-4989-8E99-B57241F9F240 : 000002 of 000013

Kentucky.

4.      On June 27, 2007 the Plaintiffs executed a mortgage in favor of Countrywide

Bank, FSA in the amount of $200,000. Countrywide Bank later merged with Bank of America.

5.      On May 13, 2010 the Plaintiffs filed a chapter 13 petition in bankruptcy in the

United States Bankruptcy Court for the Western District of Kentucky case number 10-40836.

6.      Bank of America Loan Servicing was listed as a creditor in the petition. BAC

Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP (BAC) filed a proof of

claim in a Chapter 13 on August 20, 2010 for $196,915.79. The proof of claim claimed an

arrearage of $3,073.24.

7.      BAC amended that claim on September 16, 2013 to show an arrearage of

$2,377.92. On October 28, 2010, the order of confirmation was amended to reflect an arrearage

on amended claim number 13 to Bank of America Home Loan Servicing of $3,073.24.

8.      On June 29, 2012 BAC moved for stay relief ( related docket entry 47 (hereinafter

doc)). That motion stated, inter alia, that the claim of BAC Home Loan Servicing was now the

claim of Bank of America by virtue of merger. Bank of America alleged default in payments of

$7,966.07.

9.      The Plaintiffs responded and denied that they were in default. They attached to

their response a proof of all payments made to BAC from December 11, 2011 through June

2012. The  response further alleged that the payments to BAC for June and July 2012 were

refused by BAC.

10.     On August 15, 2012, the Bankruptcy court ordered an evidentiary hearing on the

motion (doc 51). That hearing was continued by agreement of the parties. By order dated

November 14, 2012 motion for stay relief was terminated (doc 55).

11.     While this was progressing, the Plaintiffs entered into a home loan modification with BAC. On March 14, 2013, counsel for the Plaintiffs moved the bankruptcy court to permit the Plaintiffs to enter into a loan modification that would among other things, reduce the Plaintiffs monthly payment to $1,093.11 including taxes and insurance.

12.     On March 15, 2013, the Bankruptcy court approved the loan modification (doc 57).

13.     On or about November 8, 2013, Nationstar Mortgage, LLC, filed a "Transfer of Claim  Other than for Security" in which they advised that they had acquired the Bank of America mortgage. The notice advised the Plaintiffs where to send the payments. The letter was signed by the Nationstar Mortgage, LLC bankruptcy department.

14.     On or about November 20, 2013, Nationstar Mortgage, LLC ( NMLLC) notified the Plaintiffs and the court of the transfer of the Bank of America claim to NMLLC (doc 64).

15.     On March 5, 2014, NMLLC advised the attorney for the Plaintiff that the payment to NMLLC was more than 30 days late. The notice included a list of options including a mortgage modification program.

16.     On March 24, 2014, counsel for the Plaintiffs by letter advised NMLLC that they could speak directly with the Plaintiffs on any proposed loan modification.

17.     On or about April 13, 2014, NMLLC sent counsel for the Plaintiffs a letter about a dedicated loan specialist for loss mitigation opportunities. Counsel mailed this to Plaintiffs on April 15, 2014.

18.     On December 2, 2014 NMLLC mailed a letter to Plaintiff's counsel identifying the Plaintiffs' dedicated loan specialist. On January 13, 2015 counsel for the Plaintiff mailed that

A08A9763-1582-4989-8E99-B57241F9F240 : 000004 of 000013

letter to the Plaintiffs.

19.     On May 20, 2015, the Plaintiffs' plan was completed and an order to discontinue

wage deduction was entered (doc 82).

20.     On June 2, 2015 (doc 84), the  Chapter 13 trustee filed notice of final cure

payment. This notice stated that the defendant NMLLC filed a claim for $2,377.92 and that claim

had been paid. The notice gave the defendant NMLLC 21 days to file a statement, 1) whether it

agreed that the debtors have paid in full the amount required to cure the default, and 2) whether

the debtor is otherwise current on all payments consistent with 11 USC section 1332 (b) (5). The

notice reflected a copy mailed to NMLLC at its address of PO Box 619094, Dallas, TX 75261-

9741.

21.     On June 4, 2015 (doc 86) the Chapter 13 trustee filed a notice of plan completion

and need to file request for discharge.

22.     On June 11, 2015, the debtors filed a certification of plan completion and request

for discharge.

23.     On June 23, 2015 NMLLC filed (doc 88) a response to notice of final cure

payment and completion of payments under the plan. The notice stated that NMLLC agreed that

the debtors paid the full amount required to cure the default on the loan. NMLLC agreed that the

debtors were otherwise current on all payments consistent with 11 USC section 1322 (b) (5).

NMLLC stated that the mortgage was paid directly and it was due for the June 1, 2015 payment.

The letter was signed by the attorney for the NMLLC.


24.     In fact, payment for June was made on June 22, 2015. All monthly payments

required in the course of the Chapter 13 proceedings were made timely.

A08A9763-1582-4989-8E99-B57241F9F240 : 000005 of 000013

25.     On June 30, 2015 (doc 89), the court entered a discharge of debtor after completion of the chapter 13 plan. The Plaintiffs had completed their plan and exited bankruptcy. On July 9, 2015 the trustee filed his final report and accounting (doc 91). The final decree was entered on July 10, 2015 and the case was closed. A copy of that order was mailed to the counsel for NMLLC.

26.     On October 29, 2015, NMLLC notified Plaintiffs that there was an escrow shortage of $ 9,182.21 and that the monthly escrow would increase by $765.19 and that the monthly payment would increase from $1,093.44 to $2,058 63. This statement was clearly wrong.

27.     The counsel for Plaintiffs wrote a letter to NMLLC advising them that they were mistaken and requesting that they correct their records. This advice was sent to NMLLC via fax.

28.     Rather than correct its records, on January 4, 2016, NMLLC sent a notice that the loan was in default as of November 1, 2015. That notice stated that the Plaintiffs needed to pay $5,056.04 to bring their home loan current. In order to cure the default, $5,156.04 must be paid by February 8, 2016. Failure to pay may result in foreclosure. The letter was signed by a dedicated loan specialist for NMLLC.

29.     Despairing of all other options, the Plaintiffs filed a motion to reopen the Chapter 13 case. On January 20, 2016, bankruptcy court reopened the Johnson's Chapter 13 case. Thereafter the Plaintiffs filed their motion for sanctions and request for attorneys fees.

30.     On January 22, 2016, (doc 96), the bankruptcy court set the motion for contempt sanctions for hearing.

31.     On February 8, 2016 counsel for NMLLC was notified that NMLLC had canceled

A08A9763-1582-4989-8E99-B57241F9F240 : 000006 of 000013

the automatic bank draft. Plaintiffs requested instructions on how to make the payment.

32.     After negotiation, the parties on July 1, 2016 ( doc 106) entered into an "agreed motion for sanction and awarding costs and attorneys fees." The parties agreed that the debtors were not in default and that there was no escrow shortage. The defendant NMLLC agreed that the plaintiffs were current until May 20, 2016 and credited the plaintiffs $810.91 towards the June payment. The order also awarded the plaintiffs their attorneys fees and cost.

33.     On July 12, 2016, NMLLC notified the Plaintiffs that there were unapplied funds and suspense of $459.16 advising that the funds could be used towards payment. Actually the credit was $810.91 as per the agreed order filed July 1, 2016 (doc 106).

34.     On July 19, 2016, counsel for the Plaintiffs wrote counsel for NMLLC advising opposing  counsel of the problems they were encountering with NMLLC, including NMLLC refusing to provide either a coupon or a monthly statement. Counsel included the July 12, 2016 letter from NMLLC.

35.     On July 19, 2016 NMLLC, again wrote to the Plaintiffs advising them that the funds in suspense were now $958.25.   The letter stated the total amount required to bring the loan current was $3,351.30. In fact, the loan was current and that fact was known to NMLLC.

36.     On about July 19, 2016, NMLLC sent a statement claiming that the Plaintiffs now owed $2,021.85. This included $2,804.50 for attorneys fees and $15.00 for property inspection.

37.     On August 16, 2016 counsel for NMLLC mailed a check to Wilkey and Wilson PSC for the court ordered attorneys fees and costs in the amount of $1135 as per the July 1, 2016 agreed order.


38.     On August 18, 2016 Plaintiffs received a monthly mortgage statement from

NMLLC which showed a mortgage payment due of $1,982.17.

39.     On August 19, 2016 counsel for Plaintiffs sent a letter to counsel for NMLLC

advising that the payment on the mortgage was $1,310.48 and asked NMLLC to send the

mortgage statement.

40.     On September 20, 2016 the Plaintiffs received a monthly mortgage statement

which showed a mortgage payment due of $1,946.42.   On October 1, 2016 a letter from

NMLLC advised the Plaintiffs of the monies in suspense of $684.31 and advised the Plaintiffs

that they needed the amount of $635.94 to be current.

41.     October 17, 2016 Plaintiffs filed a motion to reopen the bankruptcy case to force

NMLLC to correct its account records.

42.     In October of 2016, the Plaintiffs were  contacted by agents from New Cingular

Wireless about leasing a portion of their real estate to construct a cell tower. As the land was

subject to the NMLLC mortgage, this agreement required the consent of NMLLC. By email, the

agent for Cingular stated to the Plaintiff that NMLLC had advised Cingular that the Plaintiffs had

not made the October and November payments. In fact, these payments had been made to

NMLLC and this fact was known to NMLLC.

43.     On December 5, 2016 Catherine T.,whose title according to her email was

document administration with NMLLC, emailed Lisa C. of New Cingular Wireless advising her

that, among other things, her company needed an oil and gas subordination agreement and that

the Plaintiffs were due for October and November 2016 mortgage payment.

44.     By email, Lisa C. replied, "I'm working with AT&T Wireless to build a new cell'

phone tower on the Johnson's property (loan number # xxxxx6533).  I'm not sure why this email

is referencing "Oil and Gas" when what I'm doing is with a cell tower and not oil and gas.

A08A9763-1582-4989-8E99-B57241F9F240 : 000007 of 000013

Attached is the agreement I emailed to NationStar in October, which I need NationStar to fill out

and sign.  Mrs. Lisa Johnson faxed over the authorization form on 12/4/16.

45. Again, NMLLC replied through its employee,

"From: Catherine T.

To: Lisa C. <lisa@xxxxxxx.com>

Cc:

Date: Mon, 5 Dec 2016 22:06:14 +0000

Subject: Cell Tower Subordination Information Needed xxxxxxxxxxxx3364 JOHNSON

Hello, This is to acknowledge the receipt of the Cell Tower subordination request.

We do apologize for the confusion this may cause you.

Please be advised, we still are waiting for the Authorization letter be uploaded in our

system.

For the meantime, may we request for the following document(s) to complete our review

-$250.00 MONEY ORDER or CASHIER'S CHECK for the Subordination fee (fee is

required prior to consideration)

-A complete/recorded copy of the lease agreement

-Application for Release of Security (attached below). Please complete page one in its

entirety

-A Survey/Drill Site Map that shows the location and distance of the house and oil and

gas operation

The Nationstar Mortgage loan must be current. Please make your October and November

payment(s) -A letter from an appraiser indicating the impact the operation will have on

the value of the property. The letter should be drafted by a person certified to make a

A08A9763-1582-4989-8E99-B57241F9F240 : 000008 of 000013

A08A9763-1582-4989-8E99-B57241F9F240 : 000009 of 000013

valid assessment. The letter should indicate the basis for the property valuation, provide a

fair market value of the property being released, and provide an explanation if the value

of the remaining property is, or will be, enhanced or diminished as a result. There should

also be a statement indicating the commonality of these operations within the area of the

proposed lease."

46.    Once more, the email requested information not relevant, not in existence

(recorded oil and gas lease) and stated that the October and November payments were not made.

Cingular Wireless advised the Plaintiffs that unless the payments were current, they could not go

forward with the lease agreement with AT&T.

47.    On January 3, 2017, NMLLC once more advised the Plaintiffs of the assignment

to their account of yet another dedicated loan specialist.

48.    On January 24, 2017, by email from NMLLC, NMLLC advised Cingular Wireless

that it was advancing funds to show that the Plaintiffs were current.

49.    On December 14, 2016 Lisa C of Cingular Wireless advised the plaintiffs that

they were dropping the proposed deal with the Johnsons because they could not deal with

NMLLC.

## COUNT I

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

50.    One who, without a privilege to do so, induces or otherwise causes  a third person

not to   a) perform a contract with another, or b) enter into or continue a business relation with

another is liable to the other for the harm caused thereby.

51.    The defendant NMLLC has shown a pattern of failure to maintain accurate

records. This failure to maintain accurate records has been a continuing problem. The negligent

A08A9763-1582-4989-8E99-B57241F9F240 : 000010 of 000013

record keeping of NMLLC caused them to report to Cingular and AT&T that the Plaintiffs were not current on their mortgage. This report of delinquency was a critical factor in the decision of AT&T not to enter into a lease agreement with the Plaintiffs for space to locate a cell tower.

52.     That lease agreement provided that a substantial monthly payment would be made to the Plaintiffs for an initial term of 5 years with an automatic right to renew for 4 additional five-year terms.

53.     By failing to accurately record and report the status of the Plaintiffs' mortgage account with them the defendant NMLLC interfered with their contract with Cingular Wireless and caused Cingular Wireless to withdraw the offer to locate the cell tower on the Plaintiff's real estate.

## COUNT II

## NEGLIGENT MISREPRESENTATION

54.     Plaintiffs adopts, restates, reiterates, and incorporates by reference each and every allegation previously made in this counterclaim.

55.     Kentucky's appellate courts have cited Restatement (Second) of Torts § 552 with approval, and have otherwise suggested that Kentucky recognizes a tort action for negligent misrepresentation. Presnell Constr. Managers, Inc. v. EH Constr., LLC, 134 S.W.3d 575 (Ky. 2004).

56.     Section 552 provides that:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise

reasonable care or competence in obtaining or communicating the information.

57.     The defendant misrepresented to third parties that the Plaintiffs were in default in their monthly mortgage payments.

58.     In reliance on the misrepresentation by the defendant, third parties terminated their pursuit of a lease of the Plaintiff's real estate for the purpose of installing a cell tower which caused the Plaintiffs to hire counsel and suffer pecuniary loss.

## COUNT III

**KENTUCKY CONSUMER PROTECTION ACT, KRS 367 ET SEQ**.

59.     Plaintiffs adopts, restates, reiterates, and incorporates by reference each and every allegation previously made in this counterclaim.

60.     Plaintiff has violated the Kentucky Consumer Protection Act, KRS 367.170(1) and 367.220(1).  Plaintiff has engaged in unfair, false, misleading, or deceptive acts or practices in the conduct of their business transactions with Plaintiffs.  More specifically, Plaintiff failed to honor a loan modification agreement with Plaintiffs, and initiated foreclosure proceedings against Plaintiffs despite default by Plaintiffs.

61.     As a direct and proximate result of Plaintiff's violation of the Kentucky Consumer Protection Act, Plaintiffs has been harmed by destructive occurrences, damaging events, and has suffered emotional damage.

62.     As a direct and proximate result of Plaintiff's violation of the Kentucky Consumer Protection Act, Plaintiffs has been financially harmed and has incurred and continues to incur financial damages, costs and expenses.

## COUNT IV

A08A9763-1582-4989-8E99-B57241F9F240 : 000011 of 000013

A08A9763-1582-4989-8E99-B57241F9F240 : 000012 of 000013

## VIOLATION OF A STATUTE

63.     Plaintiffs adopts, restates, reiterates, and incorporates by reference each and every allegation previously made in this counterclaim.

64.     Pursuant to KRS 446.070, Plaintiffs may recover damages from Plaintiff sustained by reason of the violations of KRS 367.170(1) and KRS 367.220(1).

## COUNT V

65.     Plaintiffs adopts, restates, reiterates, and incorporates by reference each and every allegation previously made in this counterclaim.

66.     The defendant is a debt collector as defined by 15 U.S.C.S. § 1692a, (6)  The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another

67.     The defendant is not collecting a debt owed to it but is the servicing agent of the holder of the note and mortgage and in that capacity collects the debt owed to another.

68.     "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

69.     (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.  § 1692e. False or misleading representations

70.     The acts above in communicating information that is known to be false of which should be known to be false violates the fair debt collection practices act.

**WHEREFORE** the Plaintiffs demand judgment against the defendant NMLLC in such amounts as may be shown at trial and that they be awarded their costs and any other relief to which they may appear entitled.

1.     For an award of compensatory damages from the Plaintiff for negligent misrepresentation;

3.     For an award of damages from the Plaintiff for violations of 15 U.S.C §1691;

4.     For an award of damages from Plaintiff for violations of KRS 367.170(1) and KRS 367.220(1);

5.     For an award of attorney fees where such award is authorized by statute.

6.     For a trial by jury;

7.     For any and all other relief to which Defendant may appear entitled, including leave to amend her pleadings as the premise may indicate.


Respectfully submitted this 30th day of May, 2017.


/s/ Russ Wilkey
Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303
Phone: (270) 685-6000
Fax: (270) 683-2229
Email: rwilkey@wilkeylaw.com
Counsel for Defendants, John and Lisa Johnson

A08A9763-1582-4989-8E99-B57241F9F240 : 000013 of 000013

*Electronically Filed*

# COMMONWEALTH OF KENTUCKY
## DAVIESS CIRCUIT COURT, DIVISION II
### CIVIL ACTION NO. 17-CI-00308

JOHN D. JOHNSON                                    PLAINTIFFS
 and
LISA R. JOHNSON

v.

NATIONSTAR MORTGAGE, LLC                           DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter came before the Court on Defendant Nationstar Mortgage LLC's Motion to

Dismiss Plaintiffs' Complaint. Having considered Defendant's Motion and being otherwise

sufficiently advised;

IT IS HEREBY ORDERED that Defendant's Motion is DENIED.

SO ORDERED this _____ day of May, 2017.

_____
Judge, Daviess Circuit Court

PREPARED BY:

/s/ Russ Wilkey
Russ Wilkey
WILKEY & WILSON, P.S.C.
111 West Second Street
Owensboro, KY 42303

COMMONWEALTH OF KENTUCKY
CIRCUIT COURT – DIV. NO. II
CIVIL ACTION NO. 17-CI-00308

JOHN D. JOHNSON                                          PLAINTIFF
and
LISA R. JOHNSON

vs.

NATIONSTAR MORTGAGE, LLC                                 DEFENDANT

_____

ORDER

_____

This matter came before the Court and the Court being sufficiently advised, it is

ORDERED that the Plaintiff's First Amended Complaint be filed.

This the 30th day of May, 2017.



Hon. Joe Castlen, Judge, Div. II
Daviess Circuit Court

ENTERED
MAY 3 0 2017
SUSAN WATHERNEY, CLERK
BY: _____ D.C.