# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 4:17-CV-00074-JHM**

**JOHN D. JOHNSON and**                                                                        **PLAINTIFFS**
**LISA R. JOHNSON**

**v.**

**NATIONSTAR MORTGAGE, LLC**                                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Nationstar Mortgage, LLC's motion to dismiss for failure to state a claim. (DN 5.) Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

Plaintiffs John and Lisa Johnson acquired property in Hawesville, Kentucky, in 2002. (Pl.'s First Am. Compl. [DN 1-3, at 75–87] ¶ 3.) They executed a mortgage on this property in favor of Countrywide Bank, FSA, in 2007. (*Id.* ¶ 4.) This mortgage was eventually transferred to Defendant Nationstar Mortgage, LLC ("Nationstar") in 2013. (*Id.* ¶¶ 13–14.) Following the transfer of the mortgage, Nationstar repeatedly failed to correctly account for whether the Johnsons had made payments in a timely fashion or whether they had paid the correct amount, which required the Johnsons to undertake efforts to correct these errors. (*Id.* ¶¶ 26, 33, 35.)

In October 2016, the Johnsons were contacted by agents from New Cingular Wireless ("Cingular"), who were inquiring about leasing a portion of the Johnson's property to construct a cell phone tower. (*Id.* ¶ 42.) Any such agreement would have required the consent of Nationstar, as the property was subject to their mortgage. (*Id.*) A Cingular representative informed the Johnsons that Nationstar was reporting that the Johnsons had not made their mortgage payments for October and November of that year, despite the fact that these payments

had been made. (*Id.*) On December 5, 2016, Nationstar requested the following from Cingular in regards to their interest in leasing a portion of the mortgaged property: a $250 subordination fee, a complete/recorded copy of the lease agreement, an application for release of security, a survey/drill site map that shows the location of the distance of the house and the oil and gas operation, and a letter from an appraiser indicating the impact the operation will have on the value of the property.[1] (*Id.* ¶ 45.) Subsequently, on December 14, 2016, Cingular advised the Johnsons that it was no longer interested in placing a cell phone tower on their property, as "they could not deal with" Nationstar. (*Id.* ¶ 49.)

The Johnsons filed this action in Daviess Circuit Court on March 23, 2017, initially asserting a single claim of negligent interference with a contractual relationship. (Pl.'s Compl. [DN 1-3, at 2–11].) Nationstar moved to dismiss the action, on the grounds that Kentucky does not recognize such a tort. (Def.'s Mot. to Dismiss [DN 1-3, at 17–20].) The Johnsons also moved to amend their complaint. On May 30, 2017, the state court granted the Johnsons' motion to amend their complaint and denied Nationstar's motion to dismiss. (State Court Orders [DN 1-3, at 88–89].) The Johnsons' first amended complaint asserts five claims: tortious interference with a contractual relationship (Count I), negligent misrepresentation (Count II), violations of the Kentucky Consumer Protection Act (Count III), entitlement to recover damages for state statutory violations (Count IV), and violations of the Fair Debt Collection Practices Act (Count V). (Pl.'s First Am. Compl. [DN 1-3, at 75–87] ¶¶ 50–70.) Nationstar then removed to this Court (DN 1) and filed a motion to dismiss for failure to state a claim. (DN 5.)

---

[1] While the dates in the First Amended Complaint are not entirely clear or sequential, at some point Cingular did contact Nationstar and inform them that many of the documents it was requesting, particularly those pertaining to oil and gas drilling, were not relevant to the proposed cell tower operation. (Pl.'s First Am. Compl. [DN 1-3, at 75–87] ¶ 44.)

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief.*" Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79. Instead, a complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 677 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. COUNT I – TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

Count I of the First Amended Complaint alleges that the "negligent record keeping" of Nationstar caused it to report incorrect information regarding the Johnsons' mortgage to

Cingular, and that this incorrect information caused the Johnsons to lose the proposed contract with Cingular for the lease. (Pl.'s First Am. Compl. [DN 1-3, at 75–87] ¶ 51.) Nationstar has moved to dismiss this count, arguing that Kentucky does not recognize a tort for negligent interference with business relations, and that the Johnsons have not alleged the existence of a contract. The Johnsons argue in opposition that Kentucky courts do recognize business torts grounded in negligent conduct.

In Kentucky, there are a number of distinctions among the so-called "business torts" that require attention in this case. Under Kentucky law, tortious conduct is actionable both when there is a contract that the defendant causes not to be performed, and when there is a business relationship, expectancy, or advantage that the defendant causes the plaintiff to lose. *See CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995) (citing Restatement (Second) of Torts § 766).) Here, the Johnsons did not have a contract with Cingular; the first amended complaint alleges that Cingular did not enter into the lease because of the conduct of Nationstar. Therefore, the Johnsons can only recover for tortious interference with a prospective business advantage.

However, Kentucky case law also establishes that "[t]ortious interference liability 'is predicated upon an intentional interference,'" rather than one grounded in negligence. *Ventas, Inc. v. Health Care Property Investors, Inc.*, 635 F. Supp. 2d 612, 621 (W.D. Ky. 2009) (citing *Carmichael-Lynch-Nolan Advert. Agency, Inc. v. Bennett & Assocs., Inc.*, 561 S.W.2d 99, 102 (Ky. Ct. App. 1977)). *See also Byers v. Toyota Motor Mfg., Ky. Inc.*, 172 F.3d 47, at *2 (6th Cir. 1999) (Table) ("as a general rule, tortious interference with contractual relations requires an intentional interference and . . . generally there is no liability for a negligent interference with a

contract") (citing Kentucky law). Therefore, the Johnsons may only assert one claim against Nationstar: intentional interference with a prospective business advantage.

For such a claim to survive a motion to dismiss, the Johnsons must assert six elements: "(1) the existence of a valid business relationship or its expectancy; (2) [the defendant's] knowledge thereof; (3) [the defendant's] intentional act of interference; (4) their improper motive; (5) causation; and (6) special damages." *Ventas*, 635 F. Supp. 2d at 621. Nationstar has argued that the Johnsons do not allege any intentional act of interference, and the Court agrees. The first amended complaint alleges the following in regards to Count I:

> The defendant [Nationstar] has shown a pattern of failure to maintain accurate records. This failure to maintain accurate records has been a continuing problem. The negligent record keeping of [Nationstar] caused them to report to Cingular and AT&T that the Plaintiffs were not current on their mortgage. This report of delinquency was a critical factor in the decision of AT&T not to enter into a lease agreement with the Plaintiffs for space to locate a cell tower.

(Pl.'s First Am. Compl. [DN 1-3, at 75–87] ¶ 51.) The Johnsons do not allege that Nationstar intentionally failed to keep accurate records of their payments, or that they intentionally told Cingular incorrect information. Instead, the allegations in the first amended complaint that are relevant to the claim for tortious interference with a prospective business advantage all pertain to negligent conduct by Nationstar. Thus, the Johnsons have failed adequately plead such a claim, and Nationstar's motion to dismiss Count I is **GRANTED**.

### B. COUNT II – NEGLIGENT MISREPRESENTATION

Count II alleges that Nationstar negligently misrepresented to Cingular that the Johnsons were in default on their monthly mortgage payments. Kentucky follows the Restatement (Second) of Torts § 552 for claims of negligent misrepresentation. *Presnell Const. Mgrs., Inc. v. EH Const., LLC*, 134 S.W.3d 575, 580–81 (Ky. 2004). Section 552 reads in pertinent part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1). Among other arguments, Nationstar argues that the claim should be dismissed since the information was offered gratuitously outside of the course of its business or a transaction in which it had a pecuniary interest.

Comment (c) to § 552 of the Restatement states that a negligent representation claim is only cognizable "when the defendant has a pecuniary interest in the transaction in which the information is given. If he has no pecuniary interest and the information is given purely gratuitously, he is under no duty to exercise reasonable care and competence in giving it." Kentucky courts have followed comment (c) and its requirement that the alleged misrepresentation must not have been offered gratuitously. *See Barton Brands, Ltd. v. O'Brien & Gere, Inc.*, 2009 WL 1037556, at *4 (W.D. Ky. Apr. 17, 2009) ("Without a legal duty requiring Astec to determine the cause of the fires or face the prospect of liability, or a promise to pay Astec if it determined the cause of the fires, it appears that Astec gratuitously provided this information to Barton Brands. As such, Plaintiff has failed to satisfy the pecuniary interest element of § 552"). A plaintiff can show that the information was not offered gratuitously two ways. First, if the information is supplied in the course of the defendant's business, profession, or employment, it is a "sufficient [but not conclusive] indication that he has a pecuniary interest in it[.]" Restatement (Second) of Torts § 552, cmt. (d). And second, a plaintiff can show that the defendant stood to gain from the transaction, even indirectly. *Id.* Under this standard, the

Johnsons have failed to allege that Nationstar had a pecuniary interest in the transaction between them and Cingular.

First, Nationstar is alleged to be a holder and servicer of mortgages. (Pl.'s First Am. Compl. [DN 1-3, at 75–87] ¶ 13.) Kentucky courts have strictly construed what is meant by the "course of his business, profession or employment," by requiring that a defendant be in the business of providing information to be liable for misrepresentations. *See Modern Holdings, LLC v. Corning Inc.*, 2015 WL 1481457, at *13 (E.D. Ky. Mar. 31, 2015) (dismissing negligent misrepresentation claim since defendant, who operated glass manufacturing facility that allegedly dumped hazardous materials near plaintiffs' property and did not publicly disclose this, is "not in the business of supplying information about environmental conditions"); *Our Lady of Bellefonte Hosp., Inc. v. Tri-States Physicians Network, Inc.*, 2007 WL 2903231, at *7 (E.D. Ky. Sep. 27, 2007) (dismissing negligent misrepresentation claim since counter-defendant hospital "is in the business of providing medical services to individuals residing in its community . . . [counter-plaintiff] has not and cannot allege that the hospital is in the business of supplying information for the guidance of others in their business transactions with third parties"). The Johnsons have not alleged that Nationstar is in the business of providing information about its customers' mortgages to third parties; instead, it is merely alleged to be a holder and servicer of the Johnsons' mortgage, whose only duties are to the Johnsons.

And second, Nationstar is not alleged to have a pecuniary interest in the proposed transaction between Cingular and the Johnsons. The Johnsons do not allege that Nationstar stood to profit from the proposed lease on the property. Comment (d) to § 552 of the Restatement indicates that a pecuniary interest "will normally lie in a consideration paid to [the defendant] . . ." Kentucky courts have recognized the existence of a pecuniary interest when the

defendant stood to benefit from the transaction at issue. *See Morris Aviation, LLC, v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683 (W.D. Ky. 2010) (finding defendant had pecuniary interest in its sale of aircraft to plaintiff when it allegedly misrepresented the state of engine manufacturer's finances); *Peppers v. LTF Greenhouses, LLC*, 2014 WL 68087, at *4 (W.D. Ky. Jan. 8, 2014) (amended complaint stated claim for negligent misrepresentation when defendant had a contract to provide plaintiff with a type of seed and ultimately provided mislabeled and incorrect seeds). Here, the Johnsons have not alleged that Nationstar stood to gain from the transaction, as they would be entitled to their monthly mortgage payments regardless of whether the Johnsons were receiving additional income from Cingular. As such, the complaint fails to establish that Nationstar had a pecuniary interest in the proposed transaction between the Johnsons and Cingular, and the information was provided gratuitously.

Even if the Johnsons had properly alleged that Nationstar had a pecuniary interest in the transaction, the claim would also fail for another important reason: the Johnsons have not alleged that they justifiably relied on the representations made by Nationstar to Cingular. In fact, much of the first amended complaint alleges that the Johnsons did not rely on any representation made by Nationstar about having defaulted on their mortgage, as they consistently sought to have their timely payments properly credited towards their debt. To the extent a viable claim may exist against Nationstar for negligent misrepresentations, that claim would belong to Cingular, as they are the only party that can plausibly allege that they justifiably relied upon the representations made by Cingular about the Johnsons' payment history. *See Boodram v. Coomes*, 2015 WL 1248809, at *6 (W.D. Ky. Mar. 18, 2015) (dismissing negligent misrepresentation claim at pleading stage for failing to plausibly allege reliance on misrepresentations). Therefore, because

the Johnsons have not stated a claim for negligent misrepresentations, Nationstar's motion to dismiss Count II is **GRANTED**.

### C. COUNTS III AND IV – KENTUCKY CONSUMER PROTECTION ACT

Count III alleges that Nationstar violated the Kentucky Consumer Protection Act ("KCPA") by failing to honor a loan modification agreement with the Johnsons and initiating foreclosure proceedings against them. Further, Count IV seeks to recover damages for the KCPA violation pursuant to KRS § 446.070. Nationstar has moved to dismiss both counts on the basis that the KCPA does not apply to real estate transactions.

Under the KCPA, "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes" may bring an action against the seller or lessor for damages suffered as a result of their "[u]nfair, false, misleading, or deceptive acts or practices[.]" KRS §§ 367.170; 367.220(1). Nationstar argues that, as a lender and servicer of mortgages, it does not provide goods or services that would make any of its conduct actionable under the KCPA. The Johnsons argue that Nationstar provides financial services that fall within the scope of the statute.

The Court of Appeals of Kentucky held in *Craig v. Keene*, 32 S.W.3d 90, 91 (Ky. Ct. App. 2000) that the KCPA does not apply to real estate transactions by individual homeowners. The Court of Appeals has also defined the term "real estate transaction" as "encompass[ing] any transaction touching upon or involving real estate." *Todd v. Ky. Heartland Mortg., Inc.*, 2003 WL 21770805 (Ky. Ct. App. Aug. 1, 2003). Federal district courts in Kentucky have consistently relied upon these interpretations of the KCPA to determine that the statute does not apply to claims by a homeowner against the holder of a mortgage, as this transaction touches upon real estate. *E.g.*, *Riley v. Wells Fargo Bank, N.A.*, 2017 WL 2240570, at *5 (E.D. Ky. May

22, 2017) ("The transaction in question involves a mortgage loan for Plaintiff's home, and, thus, the KCPA is not applicable"); *Busch v. Wells Fargo Home Mortg., Inc.*, 2017 WL 82473, at *8 (E.D. Ky. Jan. 9, 2017). The Johnsons rely upon *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819 (Ky. 1988), to argue that a mortgage is more akin to a financial service transaction than a real estate transaction. *Stevens* held that the sale of a home owners' insurance policy was a "service" under the KCPA, and therefore, deceptive conduct under the policy was actionable. The court stated that "[a]n insurance policy is nothing more and nothing less than a contract providing for delivery of financial services as specified in the policy when loss occurs as described in the policy." *Stevens*, 759 S.W.2d at 821. But equating a mortgage with a home owners' insurance policy renders the opinions in *Craig* and *Todd* null. If the granting of a mortgage does not "touch[ ] upon or involv[e] real estate," then it is hard to see what transactions would qualify as real estate transactions. The sale of property, which very often will involve the use of lender services and the granting of a mortgage, clearly touches upon the real estate at issue in the transaction. Therefore, the Court will not interpret *Stevens* to equate a mortgage with an insurance policy.

The Johnsons' claims under the KCPA are based upon Nationstar's conduct in servicing their mortgage. Because a mortgage is a real estate transaction, the KCPA does not apply to this conduct. Therefore, Nationstar's motion to dismiss Counts III and IV is **GRANTED**.

### D. COUNT V – FAIR DEBT COLLECTION PRACTICES ACT

Count V alleges that Nationstar violated the Fair Debt Collection Practices Act ("FDCPA") by communicating information that was either known to be false or should have been known to be false. The FDCPA states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

15 U.S.C. § 1692e. Nationstar argues that this claim should be dismissed since its communications in this case were not "in connection with the collection of any debt," but rather were in relation to the Johnsons' attempted lease of the property. The Johnsons argue that every communication by Nationstar is in furtherance of its collection of debts, as it only exists as an entity to collect debts.

First, the Sixth Circuit has indicated that the Johnsons' position on this issue is overbroad. In *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011), the court stated:

> The text of § 1692e makes clear that, to be actionable, a communication need not itself be a collection attempt; it need only be "connect[ed]" with one. Thus, we agree with the Seventh Circuit that an explicit demand for payment is not always necessary for the statute to apply. But it is just as clear that the statute does not apply to every communication between a debt collector and a debtor. So the question is where to draw the line.

(quotations and citations omitted). However, the court in *Grden* went on to draw the line at whether the communication's "animating purpose" is to collect payment:

> for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor . . . [a communication] that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, is one that has the requisite connection.

*Id.* When a motion to dismiss argues that a communication did not have the animating purpose of inducing payment, "we need not determine [a debt collector's] actual purpose when sending the letter. Rather, we ask whether it is plausible, based on the facts alleged in the complaint, that one of the purposes animating [the debt collector's] decision to send the letter was to induce payment by the [the debtor]." *Estep v. Manley Deas Kochalski, LLC,* 552 F. App'x 5002, 505 (6th Cir. 2014).

11

The Court finds that the Johnsons have plausibly alleged that the communications referenced in the first amended complaint were aimed at collecting a debt. The Johnsons' first amended complaint references two general categories of communications made by Nationstar: its communications directly with the Johnsons that incorrectly indicated they were in default or had missed payments, and its communications with Cingular that indicated the same. (*See* Pl.'s First Am. Compl. [DN 1-3, at 75–87] ¶¶ 65, 70) (incorporating prior allegations of conduct by Nationstar). The first set of communications directly indicated to the Johnsons that they were in default on their mortgage, while the second set was given to a third party that was in communication with the Johnsons and who were not going to enter into a lease with the Johnsons if they were in default. (*Id.* ¶ 46.) It is plausible that either or both sets of communications were in part motivated by Nationstar's desire to collect on the Johnson's debt; a natural consequence of a debtor learning they are in default is to attempt to cure the deficiency, even if no debt is currently owed. *See Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012) ("The legislative history of the FDCPA indicates that . . . the purpose of the Act's debt verification is to eliminate the recurring problem of debt collectors . . . attempting to collect debts which the consumer has already paid") (citations and quotations omitted). Dismissal of the FDCPA claim on the grounds that the communications were not attempts to collect a debt is inappropriate at this early stage. *See Estep*, 552 F. App'x at 505 ("The 'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court"). Therefore, Nationstar's motion to dismiss Count V is **DENIED**.

## IV. Conclusion

Therefore, for the reasons stated above, Defendant Nationstar Mortgage, LLC's motion to dismiss (DN 5) is **GRANTED IN PART** and **DENIED IN PART.**

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 8, 2017

cc: counsel of record